[No. H031285. Sixth Dist. May 20, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
CHRISTOPHER JAMES WARDELL, Defendant and Appellant.

## COUNSEL

Gene David Vorobyov, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Martin S. Kaye and Christina Vom Saal, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

MIHARA, J.—After his original convictions were reversed on appeal and the matter was remanded for retrial, defendant was again convicted by jury trial of three counts of second degree robbery (Pen. Code, §§ 211, 212.5, subd. (c)) and 14 counts of felony false imprisonment (Pen. Code, §§ 236, 237), and the jury again found true that he had personally used a firearm in the commission of each offense (Pen. Code, §§ 12022.5, subd. (a), 12022.53, subd. (b)). Defendant admitted that he had served a prison term for a prior felony conviction (Pen. Code, § 667.5, subd. (b)). He was committed to state prison to serve a term of 23 years eight months, and the trial court imposed a $10,000 restitution fund fine.

On appeal, defendant contends that (1) one of the felony false imprisonment counts is not supported by substantial evidence, (2) the personal use of a firearm enhancement attached to that count is not supported by substantial evidence, (3) the jury instructions on the personal use of a firearm allegations

were inadequate, and (4) the trial court improperly increased the restitution fund fine from $200 to $10,000 after his successful appeal.[1] The Attorney General concedes that the $10,000 restitution fund fine must be reduced to $200. We hold that a Penal Code section 12022.5, subdivision (a) personal use of a firearm enhancement does not require specific intent and does not require sua sponte instructions on the meaning of the phrase "displays a firearm in a menacing manner." We reject defendant's challenges to the sufficiency of the evidence, modify the judgment to reduce the restitution fund fine, and affirm the modified judgment.

## I. Facts

A Bank of America branch in San Jose was robbed shortly before 4:00 p.m. on January 21, 2003. The robbery, which lasted just a few minutes, was captured on video by the bank's surveillance camera. The robber, who was wearing a ski mask, held a gun and pointed it directly at numerous people. He told everyone to "[g]et on to the floor" and demanded money from the tellers. Bank employees gave the robber money that included "bait" money and several ProNet tracking devices. Photocopies had been made of the bait money so that there was a record of the serial numbers on those bills. A ProNet device is a tracking device that is sandwiched between two $20 bills. Some police cars are equipped with monitors that can track the signal from a ProNet device. The bank employees activated the bank's silent alarm during the robbery. The robber collected more than $20,000 in cash, left the bank, and entered the passenger side of an old silver Toyota hatchback that was parked outside the bank. Another person was in the driver's seat of the Toyota. The Toyota immediately "took off."

The police arrived at the bank a few minutes after the robbery. Within about 15 minutes of the robbery, the police tracked the ProNet devices to the area near a home at 540 Broderick, which was about five miles away from the bank. The police set up a perimeter around that area. A strong ProNet signal seemed to be coming from a dark Saturn about two blocks away from 540 Broderick. When the Saturn pulled over, a police officer detained the driver, Darrell Gentry, who was the only occupant of the car. A search of the Saturn turned up no clothing or money associated with the robbery. No ProNet "hits" came from the Saturn after it stopped. Gentry was released.

---

[1] In his opening appellate brief, defendant challenged the imposition of a court security fee. However, in his reply brief, defendant conceded that his challenge to the court security fee has been resolved against him by the California Supreme Court's decision in *People v. Alford* (2007) 42 Cal.4th 749 [68 Cal.Rptr.3d 310, 171 P.3d 32]. Therefore, we need not address this contention.

David Arellanes arrived at his home at 540 Broderick about 4:20 p.m. and saw police cars in the area. After spending some time outside with his cousins "watching what was going on," Arellanes went inside his home. When Arellanes came into his house, he saw defendant enter the house through the back door. Arellanes was "scared," because defendant was carrying a gun in his hand. Defendant was also carrying a jacket. Defendant told Arellanes to "keep quiet" and "stay where I was." After a few minutes, defendant had Arellanes walk in front of him toward one of the bedrooms. Defendant followed Arellanes with the gun in his hand, but kept the gun pointed down at the ground. Defendant never pointed the gun at Arellanes. He hid some money under the mattress in that bedroom, took a backpack that belonged to Arellanes's cousin, and put the jacket he was carrying inside the backpack.

The police surrounded 540 Broderick after receiving very high ProNet signals from the home, but the signals eventually "just went completely dead." After defendant and Arellanes had spent 15 or 20 minutes in the bedroom, defendant directed Arellanes into the bathroom. Defendant put some money and ProNet devices in the toilet. Then defendant directed Arellanes into another bedroom. The telephone rang several times, but defendant told Arellanes not to answer it. Defendant also told Arellanes to calm down and relax. They remained in that bedroom for about an hour and a half. When the police could be heard attempting to enter the house, defendant hid in the bedroom's closet with his gun and the backpack. Arellanes left the room and made contact with the police.

Defendant was arrested. The handgun and jacket were found inside the backpack in the bedroom closet, and over $20,000 was found inside the jacket. Three disabled ProNet devices and three $20 bills were found in the toilet, and over $1,000 was found hidden under a mattress in the house. The serial numbers on the recovered money matched the bait money taken from the bank. Over $750 was found in defendant's pants pockets along with an address book. Darrell Gentry's name and telephone number were listed in the address book. Gentry subsequently admitted that he had been the driver of the getaway car. The Toyota was later found abandoned near Highway 101.

## II. Discussion

### A. Sufficiency of the Evidence

Defendant challenges the sufficiency of the evidence to support his conviction for felony false imprisonment of Arellanes and the finding that he personally used a firearm in doing so. " '[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt.' " (*People v. Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738], quoting *Jackson v. Virginia* (1979) 443 U.S. 307, 318–319 [61 L.Ed.2d 560, 99 S.Ct. 2781].) "[The] appellate court must view the evidence in the light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Reilly* (1970) 3 Cal.3d 421, 425 [90 Cal.Rptr. 417, 475 P.2d 649]; accord, *People v. Pensinger* (1991) 52 Cal.3d 1210, 1237 [278 Cal.Rptr. 640, 805 P.2d 899].)

### 1. Felony False Imprisonment of Arellanes

■ "False imprisonment is the unlawful violation of the personal liberty of another." (Pen. Code, § 236.) False imprisonment is a misdemeanor unless it is "effected by violence, menace, fraud, or deceit," in which case it is a felony. (Pen. Code, § 237.) Defendant concedes that he falsely imprisoned Arellanes. He contends only that the false imprisonment was not felonious. The prosecutor relied solely on evidence of menace to support a felony conviction on this count.[2] " 'Menace' is defined as ' " 'a threat of harm express or implied by word or act.' " ' " (*People v. Reed* (2000) 78 Cal.App.4th 274, 280 [92 Cal.Rptr.2d 781].)

Defendant relies heavily on *People v. Matian* (1995) 35 Cal.App.4th 480 [41 Cal.Rptr.2d 459] (*Matian*). During Matian's sexual assault on the victim, he squeezed her breast hard enough to cause bruising. After the sexual assault was over, he "prevented [her] from leaving by grabbing her wrist, yelling at her not to go and by thwarting her attempts to leave by glaring and approaching her every time she tried to get out of her chair." (*Matian*, at p. 484.) Division Seven of the Second District Court of Appeal concluded that this was insufficient evidence of menace because Matian had not used a deadly weapon or made any verbal threat. (*Matian*, at pp. 485–487.)

*Matian* is readily distinguishable on its facts from this case. By openly holding a gun in his hand as he directed Arellanes around the house,

---

[2] The prosecutor argued that defendant had falsely imprisoned Arellanes by impliedly threatening him with the gun. "It doesn't matter the gun wasn't pointed at his head, the gun is a gun. Whether it's held at your side, [or] it's pointed at your head, it's still there." Defendant's trial counsel argued to the contrary. "When he was in the house with Mr. Arellanes, he did not use the gun in a menacing fashion. Mr. Arellanes, of course, was scared, but he did not—Mr. Wardell did not use the gun in a manner to threaten him with; therefore, at the end of the case here, the false imprisonment is a misdemeanor." The prosecutor's rebuttal argument contested the defense argument. "The difference between felony false imprisonment and misdemeanor false imprisonment is that [*sic*] the element of menace or violence; and clearly, when you have a gun by your side and you are directing a person to go from room to room and tell him, 'Don't pick up that phone. Don't go out that door. Don't go,' a multitude of police officers are waiting out there to help you, this is a menace. A gun is a menacing instrument."

defendant implied that he was threatening to use the gun. No similar implied threat of harm was present in *Matian*, because Matian did not utilize any weapon whatsoever to facilitate his imprisonment of the victim.

Furthermore, *Matian*'s holding has been roundly criticized, even within the Second District. In *People v. Castro* (2006) 138 Cal.App.4th 137 [41 Cal.Rptr.3d 190] (*Castro*), Castro drove up next to a teenage girl, made lewd comments, and then grabbed her arm and pulled her toward him. (*Castro*, at p. 139.) He made no verbal threats, and did not display any weapon. (*Ibid.*) He was convicted of felony false imprisonment. On appeal, he relied on *Matian* and claimed that he had not used sufficient force to make the offense a felony. (*Castro*, at pp. 139–140.) Division Four of the Second District disagreed with *Matian* and concluded that Castro's conduct in pulling the girl toward him was sufficient use of force to support a felony conviction. (*Castro*, at pp. 142–143.)

In *People v. Aispuro* (2007) 157 Cal.App.4th 1509 [69 Cal.Rptr.3d 585] (*Aispuro*), the Fifth District disagreed with the holding in *Matian* and distinguished it. (*Aispuro*, at p. 1513.) Aispuro, who displayed no weapon and used no force, verbally threatened to " 'do something' " to the victims if they did not comply. (*Aispuro*, at p. 1513.) His appellate challenge to the sufficiency of the evidence of menace based on *Matian* was rejected because of the presence of the verbal threat and because the Fifth District concluded that *Matian* was wrong.

■ We agree with the criticism of *Matian* in *Castro* and *Aispuro*. When a rational fact finder could conclude that a defendant's acts or words expressly or impliedly threatened harm, the fact finder may find that there is menace sufficient to make false imprisonment a felony. An express threat or use of a deadly weapon is not necessary. Here, defendant's act of continuously and openly holding a gun in his hand throughout his imprisonment of Arellanes clearly implied a threat to use the gun to harm Arellanes if he did not comply. The evidence supports the jury's finding of felony false imprisonment of Arellanes.

## 2. Firearm Use Allegation as to False Imprisonment of Arellanes

Defendant contends that there is not substantial evidence in the record to support the jury's finding that he personally *used* a firearm in the commission of the false imprisonment of Arellanes.

■ "[A]ny person who personally uses a firearm in the commission of a felony or attempted felony shall be punished by an additional and consecutive

term of imprisonment in the state prison for 3, 4, or 10 years, unless use of a firearm is an element of that offense." (Pen. Code, § 12022.5, subd. (a).) "Nothing in the language of section 12022.5(a) discloses a legislative intent to limit its application to situations where the gun is pointed at the victim or the defendant issues explicit threats of harm." (*People v. Granado* (1996) 49 Cal.App.4th 317, 322 [56 Cal.Rptr.2d 636] (*Granado*).) "There are no precise formulas, or particular fact patterns to follow, to determine whether a gun has been 'used' for purposes of a sentence enhancement." (*Alvarado v. Superior Court* (2007) 146 Cal.App.4th 993, 1002 [53 Cal.Rptr.3d 416] (*Alvarado*).)

"Although the use of a firearm connotes something more than a bare potential for use, there need not be conduct which actually produces harm but only conduct which produces a fear of harm or force by means or display of a firearm in aiding the commission of one of the specified felonies. 'Use' means, among other things, 'to carry out a purpose or action by means of,' to 'make instrumental to an end or process,' and to 'apply to advantage.' (Webster's New Internat. Dict. (3d ed. 1961).) The obvious legislative intent to deter the use of firearms in the commission of the specified felonies requires that 'uses' be broadly construed." (*People v. Chambers* (1972) 7 Cal.3d 666, 672 [102 Cal.Rptr. 776, 498 P.2d 1024].)

"Thus when a defendant deliberately shows a gun, or otherwise makes its presence known, and there is no evidence to suggest any purpose other than intimidating the victim (or others) so as to successfully complete the underlying offense, the jury is entitled to find a facilitative use rather than an incidental or inadvertent exposure." (*Granado, supra*, 49 Cal.App.4th at p. 325.)

Defendant relies on *People v. Hays* (1983) 147 Cal.App.3d 534 [195 Cal.Rptr. 252] (*Hays*) and *Alvarado*. Hays committed a robbery with a rifle strapped over his shoulder, but he never held the rifle in his hands or displayed it in a menacing manner. (*Hays*, at p. 544.) The Court of Appeal, after exhaustively reviewing prior case law, concluded that there was insufficient evidence of use because "a bare potential for use will not support a use enhancement under section 12022.5." (*Hays*, at pp. 544–549.)

*Hays* is factually inapposite. Rather than merely passively displaying the gun as in *Hays*, defendant openly gripped the gun in his hand continuously throughout his imprisonment of Arellanes and always kept the gun between himself and Arellanes as he directed Arellanes around the house.[3] Defendant's *use* of the gun had no purpose other than to intimidate Arellanes

---

[3] The prosecutor argued that defendant used the handgun to falsely imprison Arellanes because he continuously displayed the gun throughout the ordeal rather than putting it away.

into complying with his demands and therefore far exceeded the "bare potential for use" that was found insufficient to support a use enhancement in *Hays*.

In *Alvarado*, the defendant came into a market, talked to the clerk, with whom he was acquainted, and then asked the clerk to call the police so that he could commit " 'suicide by cop.' " The clerk noticed that there was a shotgun lying on top of a candy rack and pointed at a wall. The defendant, who was standing near the shotgun, never picked up the shotgun or called attention to it, but he rested his hand on or near the shotgun. The Court of Appeal concluded that there was insufficient evidence to support a use enhancement that was attached to the charged burglary count. (*Alvarado, supra*, 146 Cal.App.4th at pp. 996–999.) "[N]o witness or potential victim testified he or she saw petitioner hold or pick up the gun, or even draw attention to its presence." (*Alvarado*, at p. 1005.) "There is no evidence to suggest, or from which to infer, he employed the gun 'at least as an aid' in the commission of the burglary." (*Ibid.*)

In contrast to the facts in *Alvarado*, defendant prominently displayed the gun by holding it in his hand and keeping it between him and Arellanes throughout the offense. By doing so, he drew attention to the gun and employed it as an aid in the commission of the offense.

None of the cases cited by defendant supports a conclusion that there is a lack of substantial evidence that defendant used the gun in the commission of the false imprisonment of Arellanes. His use of the gun was not a mere passive display, and his deliberate use of the gun to herd Arellanes around the house had no purpose other than to intimidate Arellanes. We reject defendant's contention.

## B. Jury Instructions Regarding Firearm Use Allegation

Defendant maintains the jury instructions on the firearm use enhancement were inadequate because they failed to require the jury to find that he harbored a specific intent and did not define "menacing manner."

### 1. Background

The jury was instructed with Judicial Council of Calfornia Criminal Jury Instructions (2006–2007) CALCRIM No. 252. "Every crime or other allegation charged in this case requires proof of the union, or joint operation, of act and wrongful intent. The following crime and allegation requires general criminal intent: [¶] False imprisonment and personally used a handgun, a firearm. To be guilty of these offenses, *a person must not only commit the*

*prohibited act, but must do so intentionally or on purpose.* It is not required, however, that the person intend to break the law. The act required is explained in the instruction for each crime or allegation. [¶] The following crime requires a specific intent or mental state: Robbery. To be guilty of an offense, a person must not only intentionally commit the prohibited act, but must do so with a specific intent or mental state. The act and intent or mental state required are explained in the instruction for each crime." (Italics added.) The jury was also instructed with CALCRIM No. 3146. This instruction provided, in part: "Someone personally uses a firearm if he or she intentionally does any of the following: [¶] One, displays the firearm *in a menacing manner*; [¶] two, hits someone with the firearm; [¶] or three, fires the firearm." (Italics added.)

## 2. Analysis

Defendant urges that a Penal Code section 12022.5, subdivision (a) use enhancement requires proof that the perpetrator *specifically intended* "to facilitate the commission of the underlying crime." In his view, the trial court's instructions to the jury were erroneous because the instructions told the jury that the enhancement required only general intent. He also claims that the common meaning of the phrase "displays the firearm in a menacing manner" differs from that phrase's legal meaning, and therefore special instructions were required defining this phrase.

■ " 'When the definition of a crime [or enhancement] consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent. When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime [or enhancement] is deemed to be one of specific intent.' " (*People v. Atkins* (2001) 25 Cal.4th 76, 82 [104 Cal.Rptr.2d 738, 18 P.3d 660].)

■ The definition of personal use of a firearm consists of a description only of the proscribed act—"personal[] use[] [of] a firearm in the commission of a felony or attempted felony." (Pen. Code, § 12022.5, subd. (a).) No intent to "do some further act or achieve some additional consequence" is part of the statutory definition.

Nor is there any case law supportive of defendant's claim. It is well established that the prosecution must prove that the defendant "intentionally" used the firearm (*People v. Johnson* (1995) 38 Cal.App.4th 1315, 1320 [45 Cal.Rptr.2d 602]), and that this use occurred "in the commission of" the crime. An intentional use of a firearm in the commission of a crime does not encompass any specific intent.

Defendant seizes on bits of language in various cases to support his claim that the "in the commission of" element of the enhancement requires proof that the firearm user specifically "intend[ed] to facilitate the commission" of the crime. "[T]he phrase 'in the commission of' a felony, as used in section 12022.5, means during and *in furtherance of* the felony." (*In re Tameka C.* (2000) 22 Cal.4th 190, 198 [91 Cal.Rptr.2d 730, 990 P.2d 603], italics added (*Tameka C.*).) Defendant argues that this language means that the gun user must have the specific intent to further the crime.

In *Tameka C.*, the California Supreme Court *rejected* a contention that a personal use enhancement requires proof of a specific intent. (*Tameka C.*, *supra*, 22 Cal.4th at pp. 198–199.) "[W]hen the Legislature intends to require proof of a specific intent in connection with a sentence enhancement provision, it has done so explicitly by referring to the required intent in the statute." (*Tameka C.*, at p. 199.) The court reasoned that the Legislature's failure to make any reference to a specific intent requirement in Penal Code section 12022.5, subdivision (a) reflected that it did not intend to require proof of a specific intent. (*Tameka C.*, at pp. 198–199.)

At its core, defendant's claim is that a gun is not used "in the commission of" a crime unless the gun user *subjectively intends* to utilize the gun to accomplish the crime. We do not read the "in the commission of" requirement to add a specific intent requirement to the enhancement but rather to require a particular attendant circumstance. A gun use occurs "in the commission of" an offense if the gun use in fact *objectively facilitated* the commission of the offense. The issue is not one of the gun user's *subjective* mental state but of the *objective role* that the gun use played in the commission of the crime. The "in the commission of" element of a personal use enhancement does not encompass a specific intent requirement.

Defendant also maintains that the trial court erred in failing to give a jury instruction that further defined the phrase "displays the firearm in a menacing manner" as it is used in CALCRIM No. 3146, because this phrase has a "peculiar technical legal meaning."

■ The phrase "displays a firearm in a menacing manner" comes from Penal Code section 1203.06's definition of "used a firearm." (Pen. Code, § 1203.06, subd. (b)(2).) Neither Penal Code section 1203.06 nor Penal Code section 12022.5 contains any definition of this phrase. Statutory language " 'is generally an appropriate and desirable basis for an instruction, and is ordinarily sufficient when the defendant fails to request amplification. If the jury would have no difficulty in understanding the statute without guidance, the court need do no more than instruct in statutory language.' " (*People v. Estrada* (1995) 11 Cal.4th 568, 574 [46 Cal.Rptr.2d 586, 904 P.2d 1197].)

A trial court is obligated to define a term only if the " 'statutory term "does not have a plain, unambiguous meaning," has a "particular and restricted meaning" [citation], or has a technical meaning peculiar to the law or an area of law [citation].' [Citation.] 'A word or phrase having a technical, legal meaning requiring clarification by the court is one that has a definition that *differs* from its nonlegal meaning.' " (*People v. Hudson* (2006) 38 Cal.4th 1002, 1012 [44 Cal.Rptr.3d 632, 136 P.3d 168].)

 Defendant claims that "displays a firearm in a menacing manner" has been defined by California courts "to mean display of a weapon with the intent to facilitate commission of the underlying offense." This claim depends in part on the validity of his contention that the enhancement requires specific intent, which we have already rejected, and in part on a misunderstanding of the separate elements of the enhancement. The elements of a personal use enhancement are a mental state, a prohibited act, and an attendant circumstance. The mental state is general intent. The prohibited act is the use of a firearm, here, the display of the firearm in a menacing manner. The attendant circumstance is that the use of the firearm occurred "in the commission of" the offense, which has been construed to mean that the use facilitated the offense. The phrase "displays a firearm in a menacing manner" serves solely to define the prohibited act, and does not relate to the attendant circumstance. Thus, this phrase does not encompass the attendant circumstance's requirement that the use facilitate the offense. Defendant suggests no other premise for his claim that the trial court was required to define this phrase, and we can conceive of none. Since this phrase is commonly understood and has no technical legal meaning, the trial court did not err in failing to define it.

## C. Restitution Fund Fine

 Defendant's original sentence, after his first trial for these crimes, included a $200 restitution fund fine. After retrial, the court imposed a $10,000 restitution fund fine. Defendant contends that his restitution fund fine must be reduced to $200, and the Attorney General concedes that he is correct. "[A] defendant should not be required to risk being given greater punishment on a retrial for the privilege of exercising his right to appeal." (*People v. Ali* (1967) 66 Cal.2d 277, 281 [57 Cal.Rptr. 348, 424 P.2d 932]; see also *People v. Hanson* (2000) 23 Cal.4th 355 [97 Cal.Rptr.2d 58, 1 P.3d 650].) The appropriate remedy is to modify the judgment to reduce the restitution fund fine to $200, and we will do so.

## III. Disposition

The judgment is modified to reduce the restitution fund fine (and its mirroring parole revocation fine) to $200. As so modified, the judgment is affirmed.

Bamattre-Manoukian, Acting P. J., and Duffy, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 20, 2008, S164590.