Filed 8/16/21  P. v. Santos CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B306738 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA124342) |
| v. | |
| SANDRO SANTOS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Mark S. Arnold, Judge.  Reversed and remanded.

Lynda A. Romero, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Amanda Lopez and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 1996, a jury convicted defendant and appellant Sandro Santos[1] of first degree murder (Pen. Code, § 187, subd. (a)),[2] among other crimes, and found true the special circumstance that Santos committed murder in the commission of a robbery (§ 190.2, subd. (a)(17)), and the allegation that he personally used a firearm during the commission of the crimes (§ 12022.5, subd. (a)). In 2020, Santos petitioned for resentencing pursuant to section 1170.95 and Senate Bill No. 1437 (Senate Bill 1437), which provide for vacatur of a defendant's murder conviction and resentencing if the defendant was convicted of felony murder and the defendant (1) was not the actual killer, (2) did not act with the intent to kill, and (3) was not a major participant who acted with reckless indifference to human life. (§§ 1170.95, subd. (a), 189, subd. (e).) The trial court summarily denied the petition without appointing counsel, finding that Santos was ineligible for resentencing as a matter of law because "[Santos] was found by the jury to be the shooter in that the personal use of a firearm allegation (P.C. 12022.5 (a)) [was found] to be true."

_____

[1] Santos has also used the name Glenn Gilbert Avilize.

[2] All further statutory references are to the Penal Code unless otherwise indicated.

2

Santos contends that the trial court erred when it found him ineligible for relief. He argues that the filing of a facially sufficient petition for resentencing under section 1170.95 entitles him to appointment of counsel and the opportunity for further briefing, regardless of the petition's merit. Santos asserts that the trial court erred when it found that, as the actual killer, he was ineligible for resentencing, either because the court engaged in impermissible fact-finding, or because it relied on the personal firearm use enhancement. Santos also contends that the jury's special circumstance finding does not bar his eligibility for resentencing as a matter of law.

The People urge us to affirm the trial court's order on the basis that Santos was a major participant in the underlying robbery and acted with reckless indifference to human life, because although the trial court did not deny the petition on that basis, we may affirm on any ground that is legally correct.

Our Supreme Court has held that the filing of a facially sufficient petition entitles a petitioner to appointment of counsel and briefing under section 1170.95. In this case, the trial court's failure to appoint counsel was not harmless. We agree with Santos that the trial court erred to the extent that it engaged in fact finding, as its evaluation of the facts was inappropriate when determining whether he made a prima facie showing of entitlement under section 1170.95, subdivision (c). We further agree with Santos that neither the jury's robbery-murder special circumstance finding nor its personal firearm use finding bars him from eligibility for resentencing. We reverse the order denying Santos's 1170.95 petition, and we remand the matter for the trial court to appoint counsel and permit briefing.

## FACTS AND PROCEDURAL HISTORY[3]

"On October 10, 1995, [Ricardo] Aguilera agreed to meet with defendant to purchase a gun. Aguilera drove to a house on Highland Avenue with his teenage stepson Gillard and Gillard's cousin Laws. Neither Aguilera, Laws nor Gillard was in possession of a firearm. Aguilera entered the house. Inside the house were defendant and [Jason] Richard with many firearms displayed. Aguilera inspected a nine-millimeter gun, and defendant quoted a price. Aguilera thought the price might be too high so he went outside to discuss it with Laws. Laws and Aguilera returned to the house. Gillard continued to wait in the car listening to music.

"Defendant pointed a gun at Laws and Aguilera, and told them to lie on the ground. Richard went through the two men's pockets and removed cash and papers. Richard then went outside at defendant's behest to retrieve Gillard. Gillard entered the house. When he saw Aguilera and Laws lying on the ground, Gillard thought they were dead and he would be killed. He turned to flee when he was confronted by Richard with a gun. Gillard and Richard struggled for the gun. The gun fired. During the struggle, defendant, who was across the living room from Gillard and Richard, fired a nine-millimeter weapon. Gillard was shot in the ribs and thigh, and Richard was fatally wounded. Richard had been shot twice in the neck and once in the torso. One neck wound and the torso wound were fatal. The torso wound was caused by a gun fired within two feet of Richard.

---

[3] The facts are drawn from this court's prior unpublished opinion in *People v. Santos* (Feb. 20, 1998, B108055) (*Santos*), of which we have taken judicial notice.

4

The fatal neck wound was inflicted by a .38-caliber weapon. Aguilera was shot in both shoulders and one knee.

"After the shooting stopped, defendant gathered a number of guns in a duffel bag and left the residence through the back door.

"Two nine-millimeter guns were involved in the shootings, as well as at least one .38 caliber gun. Nine millimeter bullets were removed from Aguilera and Gillard. A .38 caliber bullet was removed from Aguilera and Richard." (*Santos*, *supra*, B108055, at pp. 3–4.)

At trial, the prosecution argued that Santos was guilty of murder on either a felony murder or provocative act theory of liability. (*Santos*, *supra*, B108055, at p. 4.) The jury convicted Santos of first degree murder (§ 187, subd. (a) [count 1]), three counts of attempted voluntary manslaughter (§§ 187/664 [counts 2, 4 & 6]), and two counts of second degree robbery (§ 211 [counts 3 & 5]). (*Id*. at p. 2.) It found true the special circumstance that Santos committed murder in the commission of a robbery (§ 190.2, subd. (a)(17)), and the allegation that he personally used a firearm during the commission of the crimes (§ 12022.5, subd. (a)). (*Ibid*.) The trial court sentenced Santos to life without the possibility of parole, plus 19 years in state prison. (*Ibid*.)

On appeal, Santos argued that there was insufficient evidence to support his first degree murder conviction on either a felony murder theory or a provocative act theory of liability. The court of appeal held that the evidence supported Santos's murder conviction under a provocative act theory and declined to reach the question of whether substantial evidence supported the conviction on a felony-murder theory. (*Santos*, *supra*, B108055, at p. 4.)

5

On April 8, 2020, Santos filed a section 1170.95 petition seeking vacatur of his murder conviction, which the court denied in a minute order dated May 27, 2020. The court ruled: "Defendant was found by the jury to be the shooter in that the personal use of a firearm allegation (P.C. 12022.5 (a)) to be true [*sic*]." [4]

Santos timely appealed.

## DISCUSSION

### *Section 1170.95*

"Senate Bill No. 1437, which went into effect on January 1, 2019, amended section 189 to limit the scope of liability for murder on a felony-murder theory. [Citation.] With respect to felony murder and as applicable to [Santos], section 189, subdivision (a) states 'All murder . . . that is committed in the perpetration of, or attempt to perpetrate, . . . robbery, [or] burglary . . . is murder of the first degree.' However, section 189, subdivision (e)—the new provision added by Senate Bill No. 1437—limits liability for felony murder to persons for whom 'one

---

[4] Santos filed a nearly identical section 1170.95 petition on June 18, 2020, which the court denied the same day in a minute order, stating: "Defendant is an actual shooter which resulted in the death of the victim. He is clearly a major participant and acted with reckless indifference to human life. Petition under P.C. 1170.95 is denied." The People assert that the second petition was successive and procedurally barred, but that we need not address that issue because although the trial court's first denial order was not premised on a major participant finding, this court may uphold the denial on any legally correct theory.

of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.' [Citation.]" (*People v. Drayton* (2020) 47 Cal.App.5th 965, 972–973 (*Drayton*); abrogated on another ground in *People v. Lewis* (July 26, 2021, No. S260598) __ Cal.5th __ [2021 WL 3137434] (*Lewis*).)

If, as Santos did here, a petitioner files a section 1170.95 petition that contains all of the statutorily required information and requests counsel, the court must appoint counsel and order briefing. (*Lewis*, *supra*, __ Cal.5th at p. __ [2021 WL 3137434, at *3–*10].) The court then evaluates whether the petitioner has made a prima facie showing that he or she is eligible for relief. (*Id.* at *3.) To do so, the trial court may review the record of conviction, however, "the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ""the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause."' (*Drayton*, *supra*, 47 Cal.App.5th at p. 978, quoting Cal. Rules of Court, rule 4.551(c)(1)).) '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' (*Ibid.*, fn. omitted, citing *In re Serrano* (1995) 10 Cal.4th 447, 456 (*Serrano*).) 'However, if the record, including the court's own

7

documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner.'" (*Drayton*, at p. 979, quoting *Serrano*, at p. 456.)" (*Id.* at *10.)

"[A] petitioner 'whose petition is denied before an order to show cause issues has the burden of showing "it is reasonably probable that if [he or she] had been afforded assistance of counsel his [or her] petition would not have been summarily denied without an evidentiary hearing."' ([*People v.*] *Daniel*[ (2020)] 57 Cal.App.5th [666,] 676, review granted [Feb. 24, 2021, S266336].)" (*Lewis, supra,* __ Cal.5th at p. __ [2021 WL 3137434, at *12].)

*Analysis*

Our Supreme Court has recently held that the filing of a facially sufficient petition—i.e. a petition that contains the basic averments required by subdivision (b)(1)(A), (B) and (C)[5]—is sufficient to establish that the petitioner has made a prima facie showing of eligibility for relief under section 1170.95, subdivision (c). (*Lewis, supra,* __ Cal.5th at p. __ [2021 WL 3137434, at *3-*10].)  Here, the trial court's failure to appoint counsel was error,

---

[5] Section 1170.95, subdivision (b)(1) provides:  "The petition shall include all of the following:  [¶]  (A) A declaration by the petitioner that he or she is eligible for relief under this section, based on all the requirements of subdivision (a).  [¶] (B) The superior court case number and year of the petitioner's conviction.  [¶] (C) Whether the petitioner requests the appointment of counsel."

8

and because we conclude "'"it is reasonably probable that if [Santos] had been afforded assistance of counsel his . . . petition would not have been summarily denied without an evidentiary hearing"' [citation]" (*Id*. at *12), the error cannot be deemed harmless.

There is no basis to deny the petition on the record before us.[6]  First, a trial court may not engage in fact-finding at this stage in proceedings.  To the extent that the trial court evaluated the facts underlying Santos's conviction to determine that he was a major participant in the burglary and acted with reckless indifference to human life, such an inquiry requires fact-finding and the weighing of evidence, which cannot take place until an order to show cause issues and a hearing is held.  (See *Drayton*, *supra*, 47 Cal.App.5th at pp. 978–979.)

Second, contrary to the People's argument, a trial court is prohibited from finding a petitioner ineligible for relief under section 1170.95, subdivision (c), solely on the basis of a special circumstance finding made before *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*) were decided.  (*People v. York* (2020) 54 Cal.App.5th 250, 257–263 (*York*), review granted Nov. 18, 2020, S264954; *People v. Torres* (2020) 46 Cal.App.5th 1168, 1180 (*Torres*), abrogated on another ground in *Lewis*, *supra*, __ Cal.5th at p. __ [2021 WL 3137434]; *People v. Smith* (2020) 49 Cal.App.5th 85, 93-94 (*Smith*), review granted July 22, 2020, S262835.)  We have explained that "[i]n their wording, the requirements for a special circumstance finding are . . . identical to the requirements for felony murder, as it is currently defined.  However, in [*Banks* and

_____

[6] The record on appeal does not contain the record of conviction in its entirety.

9

*Clark*], our Supreme Court 'construed the meanings of "major participant" and "reckless indifference to human life" "in a significantly different, and narrower manner than courts had previously." (*Torres*, *supra*, 46 Cal.App.5th at p. 1179.)' (*Smith*, *supra*, 49 Cal.App.5th at p. 93.) Where a special circumstance finding was made before *Banks* and *Clark*, the terms 'major participant' and 'reckless indifference' underlying that finding have significantly different meanings than these terms have for purposes of convicting a defendant of murder pursuant to section 189, subdivision (e)(3), as amended by Senate Bill 1437. As a consequence, a pre-*Banks* and *Clark* special circumstance finding cannot preclude eligibility for relief under . . . section 1170.95[, subdivision (c),] . . . because the factual issues that the jury was asked to resolve in a trial that occurred before *Banks* and *Clark* were decided are not the same factual issues our Supreme Court has since identified as controlling." (*York*, *supra*, at p. 258, fn. omitted.) The People offer no persuasive reason for us to abandon our prior holdings.

Finally, a finding under section 12022.5, subdivision (a), that a defendant personally used a gun does not automatically preclude eligibility under section 1170.95. (See *People v. Offley* (2020) 48 Cal.App.5th 588, 598–599 (*Offley*) [jury's true finding under §12022.53, subd. (d) alone does not preclude eligibility for resentencing under §1170.95, subd. (c)].) In *Offley*, our colleagues in Division One of the Second District of the Court of Appeal addressed the related issue of whether a section 12022.53, subdivision (d) enhancement automatically precludes relief. The facts in *Offley* varied significantly from this case—Offley was tried with multiple defendants and convicted of second degree murder. The jury in Offley's case found true the allegation that

10

Offley personally and intentionally discharged a firearm causing the death of the victim under section 12022.53, subdivision (d). Moreover, Offley's jury was instructed on the natural and probable consequences doctrine as it relates to conspiracy to murder. Regardless of these differences, however, the section 12022.53, subdivision (d) enhancement involved is analogous to the firearm use enhancement in this case, in that both are "general intent enhancement[s], and do[] not require the prosecution to prove that the defendant harbored a particular mental state as to the victim's injury or death." (*Offley*, *supra*, 48 Cal.App.5th at p. 598 [§12022.53, subd. (d)]; see also *People v. Wardell* (2008) 162 Cal.App.4th 1484, 1494–1495 [§12022.5, subd. (a) is a general intent enhancement].)

As the *Offley* court explained, "Both express and implied malice require proof of the defendant's mental state. In the case of express malice, the defendant must have intended to kill. [Citation.] Implied malice also involves a mental component, namely a """conscious disregard for the danger to life that the [defendant's] act poses."" [Citation.] This requires "examining the defendant's subjective mental state to see if he or she actually appreciated the risk of his or her actions." [Citation.] "It is not enough that a reasonable person would have been aware of the risk." [Citation.]" (*Offley*, *supra*, at p. 598.) The *Offley* court concluded that "Because an enhancement under section 12022.53, subdivision (d) does not require that the defendant acted either with the intent to kill or with conscious disregard to life, it does not establish that the defendant acted with malice aforethought." (*Ibid*.) The same is true of section 12022.5, subdivision (a).

In this case, there is no information in the appellate record that leads us to conclude Santos was Richard's actual killer as a

matter of law. Although the record of conviction (or new and/or additional evidence submitted pursuant to section 1170.95, subdivision (d)) may contain evidence that could lead the finder of fact to conclude that this was the case, as we have discussed, the trial court cannot properly engage in fact-finding at this early stage.

Santos was tried under both the provocative act and the felony murder theory of liability. Following the enactment of Senate Bill 1437, he could still be liable for murder under a provocative act theory of murder,[7] or under a felony murder theory if he was the actual killer, intended to kill, or was a major participant in the robbery who acted with reckless indifference to human life. (§§ 1170.95, subd. (a), 189, subd. (e).) None of those conditions can be established definitively on the record before us.

---

[7] "Under the provocative act [murder] doctrine, when the perpetrator of a crime maliciously commits an act that is likely to result in death, and the victim kills in reasonable response to that act, the perpetrator is guilty of murder. [Citation.] 'In such a case, the killing is attributable, not merely to the commission of a felony, but to the intentional act of the defendant or his accomplice committed with conscious disregard for life.' [Citation.]" (*People v. Gonzalez* (2012) 54 Cal.4th 643, 655, fn. omitted (*Gonzalez*).) All of the courts to have considered the issue have found that the provocative act theory of murder is not a subset of the natural and probable consequences doctrine, and is therefore a viable theory of liability following enactment of Senate Bill 1437. (See *People v. Mancilla* (Aug. 12, 2021, No. B308413) __ Cal.App.5th __ [2021 WL 3560657, at *5–*7]; *People v. Swanson* (2020) 57 Cal.App.5th 604, review granted February 17, 2021, S266262; *People v. Johnson* (2020) 57 Cal.App.5th 257; *People v. Lee* (2020) 49 Cal.App.5th 254, review granted July 15, 2020, S262459.) Santos does not argue otherwise.

12

We therefore reverse and remand to the trial court to appoint counsel and order briefing, as required under section 1170.95, subdivision (c).

## DISPOSITION

The trial court's order denying Santos's section 1170.95 petition is reversed and the matter is remanded for the trial court to appoint counsel and order briefing from the parties pursuant to section 1170.95, subdivision (c).


MOOR, J.

We concur:


RUBIN, P. J.


KIM, J.