Filed 7/12/24  P. v. Sinaiko CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D081762 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. CRN17124) |
| GLEN DYLAN SINAIKO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, David G. Brown, Judge.  Reversed and remanded with directions.

Alex Kreit, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski, Felicity A. Senoski, and Juliet W. Park, Deputy Attorneys General, for Plaintiff and Respondent.

Glen Dylan Sinaiko appeals from an order summarily denying his petition for resentencing under Penal Code[1] section 1170.95, renumbered and now section 1172.6.[2] We conclude that the trial court incorrectly determined, at the prima facie stage, that Sinaiko was ineligible for relief. We accordingly reverse the order denying the petition for resentencing and remand.

I

FACTUAL AND PROCEDURAL BACKGROUND

In 1990, the People charged Sinaiko with murder, in violation of section 187, subdivision (a), and alleged that Sinaiko personally used a firearm in the offense, in violation of section 12022.5, subdivision (a). A codefendant was charged separately with murder.

Sinaiko pled guilty to second degree murder and admitted the firearm allegation. The factual basis of the plea, as stated on the plea agreement form, was: "unlawfully killed another human being with malice aforethought, said killing being committed by means of use of a shotgun." The court sentenced Sinaiko to a total indeterminate term of 17 years to life.

In March 2022, Sinaiko filed a petition for resentencing pursuant to section 1172.6. In his petition, Sinaiko declared that he had been convicted of murder and "could not presently be convicted of murder or attempted murder because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019."

---

[1] Further undesignated statutory references are to the Penal Code.

[2] Effective June 30, 2022, section 1170.95 was renumbered to section 1172.6 without substantive change. (See Stats. 2022, ch. 58, § 10.) We refer to the subject statute by its current renumbered form.

The People filed a response. They argued that Sinaiko had "fail[ed] to make the necessary prima facie showing and his petition should be denied." In support of their position, the People attached Sinaiko's plea agreement form, the abstract of judgment, the information, and the transcript from his preliminary hearing.

The People relied on the preliminary hearing transcript for a statement of facts, which the People cautioned was "provided for information purposes only and is not intended for the court to form a factual basis at the prima facie hearing." The People's description was as follows:

> "When officers arrived, they found the victim, later identified as William Franklin Odam, lying on his back in the riverbed with his intestines exposed and piled on his stomach. [Citation.] The victim was airlifted to the hospital, where he died. [Citation.] Odam's cause of death was a gunshot wound to the abdomen. [Citation.]
>
> "Detective Ahrens interviewed [Sinaiko] on January 6, 1990, when [he] turned himself in. [Citation.] During the interview, [Sinaiko] admitted participation in the shooting incident that occurred on September 8, 1998. [Citation.] [Sinaiko] appeared privy to facts that had not previously been disclosed. [Citation.] [Sinaiko] was able to describe the exact location where Odam's body was found. [Citation.] [Sinaiko] explained exactly where on Odam's body [Sinaiko] fired a shot into his body. [Citation.] He also described the correct caliber or gauge of the shotgun that he used to shoot Odam."

The People argued that Sinaiko failed to state a prima facie case because the record of conviction established that he was the sole, actual, and direct perpetrator of the murder. Specifically, they argued that Sinaiko "pled guilty to murder and admitted that he personally used a shotgun in the commission of the murder. [Sinaiko] is the sole perpetrator charged with murder in this case. [Citation.] Therefore, as the actual direct perpetrator of

3

the murder, [Sinaiko] is ineligible for the relief he seeks and the petition should be denied."

In January 2023, the trial court held a prima facie hearing. The People reiterated that Sinaiko was ineligible for relief because he was convicted as the actual killer, as demonstrated by his specific admissions in support of the factual basis for his guilty plea. Defense counsel argued that Sinaiko's petition was "sufficient on its face" and asked for an evidentiary hearing on Sinaiko's eligibility for resentencing "to give both sides the opportunity to look at this matter in more detail."

The trial court denied the petition on the ground that Sinaiko had not made a prima facie showing of eligibility for relief. The court explained that Sinaiko "was the actual killer in this regard and that was a result of his plea of guilty and in fact pled guilty of that—pled guilty to that particular charge and, as a result, this petition is denied." It also noted that it "should include that it is clear in the pleadings that petitioner was the sole participant in the murder. And as such, I'm rejecting his factual allegations."

## II.

## DISCUSSION

A.  *Applicable Legal Standards*

Effective January 1, 2019, the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.), which limited accomplice liability under the felony murder rule, eliminated the natural and probable consequences doctrine as it relates to murder, and eliminated convictions for murder based on imputing malice based solely on a person's participation in a crime. (See *People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*); Stats. 2018, ch. 1015, § 1, subd. (f).) As amended by Senate Bill No. 775 (2021–2022 Reg. Sess.), effective January 1, 2022, the ameliorative changes to the law were made expressly

4

applicable to attempted murder and manslaughter. (See *People v. Birdsall* (2022) 77 Cal.App.5th 859, 865 & fn. 18.) Under section 1172.6, a person serving a sentence for murder, attempted murder, or manslaughter under theories that have since been eliminated or narrowed may file a petition to have the conviction vacated and to be resentenced. (§ 1172.6, subd. (a).)

After appointing counsel if a petitioner makes such a request (§ 1172.6, subd. (b)(3)), the first step for a trial court in evaluating the petition is to determine whether the petitioner has made a prima facie case for relief and, if so, to issue an order to show cause. (§ 1172.6, subd. (c).) "[T]he parties can, and should, use the record of conviction to aid the trial court in reliably assessing whether a petitioner has made a prima facie case for relief." (*Lewis, supra*, 11 Cal.5th at p. 972.) "While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case . . . , the prima facie inquiry . . . is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved." ' " " 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Id.* at p. 971.)

At the prima facie stage, " '[i]f the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition.' " (*People v. Curiel* (2023) 15 Cal.5th 433, 460.) "We review de novo an order denying a section 1172.6 petition at the prima facie review stage." (*People v. Flores* (2023) 96 Cal.App.5th 1164, 1170.)

B.	*The Record of Conviction Does Not Establish that Sinaiko Was Ineligible for Relief*

The trial court found, and the People argued below, that Sinaiko had not made a prima facie showing for relief because the record conclusively established that he "was the sole participant in the murder." The trial court's conclusion is contradicted by evidence in the appellate record that another man was separately charged with murder as a "codefendant" in this case and by the procedural history in an unpublished opinion of this Court in the codefendant's case. (*In re Schlappi* (Jul. 20, 2009, D053434) [nonpub. opn.]; cf. § 1172.6, subd. (d)(3) ["The court may also consider the procedural history of the case recited in any prior appellate opinion."].) On appeal, the People concede that "prosecutors elected to charge [Sinaiko] and his codefendant . . . separately in this case." The People further concede that "the mere fact that [Sinaiko] was charged alone is not sufficient to conclude that he was the sole participant of the murder."

The People nevertheless argue on appeal that "the factual basis for his guilty plea eliminates the possibility that he was convicted as an aider and abettor under the natural consequences doctrine or any other theory of imputed malice." We disagree. Because the record of conviction does not conclusively refute the allegations in Sinaiko's petition, he has made a prima facie showing of eligibility for relief and is entitled to an order to show cause and an evidentiary hearing. (*People v. Flores* (2022) 76 Cal.App.5th 974, 991 (*Flores*) ["Only where the record of conviction contains facts conclusively refuting the allegations in the petition may the court make credibility determinations adverse to the petitioner."].) The factual basis for his plea is particularly ambiguous because it was generic and essentially identical to "murder" as set forth in section 187, subdivision (a) (except for his admission in passive voice that the killing was "committed by means of use of a

6

shotgun"), the record does not contain the transcript of his plea colloquy, the preliminary hearing transcript appears to be incomplete and was merely provided for "informational purposes," and there is no evidence Sinaiko stipulated to the preliminary hearing transcript (or anything else) as a factual basis for his plea.

The opinion in *People v. Rivera* (2021) 62 Cal.App.5th 217 (*Rivera*), is instructive. In *Rivera,* as in this case, the defendant was charged with murder and entered a plea to second degree murder. (*Id.* at pp. 225–226.) There, the defendant pleaded no contest to allegations that he "did willfully, unlawfully[,] and with malice aforethought murder" the victim in a case in which there was a codefendant. (*Id.* at p. 225, brackets in original.) The People argued that Rivera's guilty plea established his ineligibility for resentencing as a matter of law because the indictment, plea, and grand jury transcript made no reference to felony murder or any other legal theory that would qualify for resentencing. (*Id.* at pp. 232–235.) The Court of Appeal disagreed, finding that "[t]he generic manner in which murder was charged here did not limit the People to prosecuting Rivera on any particular theories." (*Id.* at p. 233.) Nor did Rivera's guilty plea conclusively establish his ineligibility because he "made no admissions related to the murder other than pleading no contest to the count as charged." (*Id.* at p. 234; see also *Flores, supra*, 76 Cal.App.5th at pp. 991–992 [finding petitioner who had pleaded no contest to murder in a case with a codefendant had made a prima facie showing of eligibility for resentencing where "[t]o find petitioner ineligible for resentencing on this record would require judicial factfinding, which is impermissible at the prima facie stage"]; *People v. Eynon* (2021) 68 Cal.App.5th 967, 978 ["Then-existing law did not require him to act with

7

malice in order to be liable for murder, so his plea and factual admissions did not encompass an admission that he acted with malice."].)

Similarly, in this case, neither the generic charge that Sinaiko "did willfully, unlawfully murder" the victim nor his generic plea admission that he "unlawfully killed another human being with malice aforethought, said killing being committed by means of use of a shotgun" conclusively establishes that "he acted with actual malice, not just that the element of malice was satisfied." (*Rivera, supra*, 62 Cal.App.5th at p. 234.) Nor does Sinaiko's admission to having personally used a shotgun within the meaning of section 12022.5, subdivision (a) conclusively establish his ineligibility, since it does not necessarily show that he was the actual killer. (*See People v. Wardell* (2008) 162 Cal.App.4th 1484, 1492 [" 'Although the use of a firearm connotes something more than a bare potential for use, there need not be conduct which actually produces harm but only conduct which produces a fear of harm or force by means or display of a firearm in aiding the commission of one of the specified felonies.' "].) In this case, the only factual basis for Sinaiko's plea revealed by the record is the one-sentence admission on the plea agreement form.

The People argue that this case is "nearly indistinguishable" from *People v. Pickett* (2023) 93 Cal.App.5th 982, review granted October 11, 2023, S281643. There, the court upheld the denial of a resentencing petition at the prima facie stage where there was "no allegation or evidence of an accomplice in the killing" of the victim and "the uncontradicted evidence shows that [the petitioner] acted alone." (*Id.* at p. 993; see also *id.* at p. 990 ["Although there is no testimony from anyone who saw Pickett fire the fatal shot, there is nothing to suggest that any other person was involved in the incident. The inference that Pickett acted alone and was the actual killer is uncontradicted

8

and compelling."].)  Unlike in *Pickett*, the record in this case reveals that another person was separately charged in connection with the killing and that this codefendant may have fired a shot at the victim.  This precludes a finding at the prima facie stage that the record conclusively establishes that Sinaiko acted alone or that he was the actual killer.

The People also contend that *People v. Saavedra* (2023) 96 Cal.App.5th 444 is "squarely on point," but the plea admission there was more specific than here.  Sinaiko's guilty plea was that he "unlawfully killed another human being with malice aforethought, said killing being committed by means of use of a shotgun."  In *Saavedra*, the defendant admitted that he had committed the attempted murder " 'by personally discharging a firearm' "— this was an unambiguous admission that he was "the actual shooter; that is, he actually attempted to murder the victims by shooting at their vehicle." (*Id.* at p. 448.)  By contrast, the factual basis in Sinaiko's plea agreement— "said killing being committed by means of use of a shotgun"—is stated in the passive voice, which proves little in a shooting involving multiple defendants as the identity of the person who fired the fatal shot is not specified.  As a result, it does not "conclusively establish as a matter of law that petitioner was the actual killer" because it does not preclude the possibility that the fatal shot was fired by the codefendant and that Sinaiko's liability was vicarious.  (*Flores, supra*, 76 Cal.App.5th at p. 991.)

Finally, this case is also distinguishable from *People v. Harden* (2022) 81 Cal.App.5th 45, which involved a jury trial.  There, the Court of Appeal "focus[ed] on . . . [the] jury instructions given and the verdicts returned based on them."  (*Id.* at p. 50.)  In that case, the prosecutor decided against asking for aiding and abetting instructions, noting "there's no evidence that there was anyone in the house other than this one intruder [Harden], not two

9

people." (*Id*. at p. 53.) Thus, because the jury was not given an aiding and abetting instruction, the defendant there could not have been convicted on that now-defunct theory of liability. Here, by contrast, Sinaiko pled guilty in a generic plea to a generic charge, there was a codefendant who may also have fired the shotgun at the victim, and there were no jury instructions that would help determine which legal theory was used to convict him.

## III.

## DISPOSITION

The order is reversed, and the case is remanded with directions for the trial court to issue an order to show cause and to conduct an evidentiary hearing.

McCONNELL, P. J.

WE CONCUR:

DATO, J.

CASTILLO, J.

10