Filed 9/4/25  P. v. Cook CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KEITH ERIC COOK,<br><br>    Defendant and Appellant. | 2d Crim. No. B331904<br>(Super. Ct. No. 2021030746)<br>(Ventura County) |

Keith Eric Cook appeals from the judgment after a jury convicted him of second degree robbery with a true finding of personal firearm use (Pen. Code,[1] §§ 211, 12022.53, subd. (b); count 1); false imprisonment with violence (§ 236; count 2); and unlawful possession of a firearm (§ 29800, subd. (a)(1); count 3). Cook admitted that he was on bail when he committed the offenses (§ 12022.1, subd. (b)) and admitted two prior serious felony convictions and strikes under the "Three Strikes" law

_____

[1] Undesignated statutory references are to the Penal Code.

(§§ 667, subds. (a)(1), (c)(1), (e)(1), 1170.12, subds. (a)(1), (c)(1)). The trial court sentenced Cook to 42 years to life in state prison. Cook contends there was insufficient evidence that he aided and abetted false imprisonment.  We affirm.

FACTUAL AND PROCEDURAL HISTORY

Cook and Jason Hoyland entered the Wild Tobacco and Gift Shop in Ventura.  They were both masked, dressed in black, and armed.  They approached the store owner, M.T.  Hoyland had a "bag" on him.  As Hoyland approached the register, Cook pointed a "short gun" at M.T. and said, "Don't fuck with us."  Hoyland, holding a rifle, pushed M.T. into a chair and zip tied his hands.  Cook pointed his firearm at M.T. while Hoyland put zip ties on him.  Hoyland then emptied the cash register and moved throughout the store, taking items from the shelves and putting them inside a duffle bag.

L.C., a patron, entered the store at approximately 11 p.m.  When he walked inside the store, L.C. stood in the pathway of the "only one way in and out."  L.C. had his head down when someone told him, "Hey, buddy, why don't you have a seat over there."  L.C. looked up and saw a "gun."  It looked like an "assault rifle."  He said the man "had a mask" and was "kind of like pointing, gesturing me to go sit down over there."  L.C. "instantly knew [the store] was getting robbed."  L.C. sat down behind the display counter.  He could see M.T. "zip-tied" next to him.

L.C. was "almost positive there were two people" in the store.  The second person said, "We need to go."  While he "didn't see a second person," he could "tell that there was more than one person moving around."  He explained there was "more than one person moving around" "[b]ecause from the movements there would be like one person here and then I think another person

ran across again to the other side of the store." L.C. complied with the directive to "move over and sit down on the floor" because he "didn't want to start any problems." He said, "I figured if I just keep my head down and comply and do whatever they want, then there wouldn't be an issue."

Cook and Hoyland eventually fled the store. Law enforcement found a duffle bag "full of black zip ties and some duct tape" inside a vehicle linked to Cook and Hoyland.

During closing, defense counsel argued that it was Hoyland who perpetrated the false imprisonment and that "[t]here is no evidence that the second person by words or conduct did anything to help effectuate that." In rebuttal, the prosecutor said Cook "was holding the handgun as Hoyland was zip-tying" M.T. Thus, Cook and Hoyland "went into [the] store with the intention to detain, imprison everybody in there" and "were working in concert."

The jury convicted Cook of second degree robbery with the personal use of a firearm (§§ 211, 12022.53, subd. (b)), felony false imprisonment (§ 236), and unlawful possession of a firearm (§ 29800, subd. (a)(1)). In a bifurcated proceeding, Cook admitted he was on bail when he committed the offenses (§ 12022.1, subd. (b)). Cook also admitted two prior serious felony convictions and strikes under the Three Strikes law. (§§ 667, subds. (a)(1), (c)(1), (e)(1), 1170.12, subds. (a)(1), (c)(1).)

The trial court denied Cook's motion to dismiss the prior strike allegations pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 and sentenced him to an aggregate term of 42 years to life in state prison: 25 years to life under the Three Strikes law for robbery, plus 10 years for the personal firearm use enhancement; five years for a prior serious felony

3

enhancement; two years for the on bail enhancement; six years concurrent for false imprisonment; and six years concurrent for the unlawful possession of a firearm.

## DISCUSSION

### *Sufficiency of the evidence*

Cook contends there is no evidence that he aided and abetted the direct perpetrator Hoyland's false imprisonment of L.C. We are not persuaded.

A person aids and abets the commission of a crime when "acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime." (*People v. Beeman* (1984) 35 Cal.3d 547, 561.) Neither presence at the scene of a crime nor knowledge of, but failure to prevent a crime, is sufficient to establish aiding and abetting its commission. (*People v. Campbell* (1994) 25 Cal.App.4th 402, 409.) But a court may nonetheless consider presence at the scene, companionship, and conduct before and after the offense when determining whether a defendant is guilty of aiding and abetting the perpetrator. (*Ibid.*)

Aiding and abetting may be committed "on the spur of the moment." (*People v. Eskew* (1962) 206 Cal.App.2d 205, 207.) A person may aid and abet a criminal offense without having agreed to do so prior to the act. (*People v. Durham* (1969) 70 Cal.2d 171, 181.) Thus, it is not necessary that the direct perpetrator expressly communicate their criminal purpose to an abettor since that purpose may be apparent from the circumstances. (*People v. Nguyen* (1993) 21 Cal.App.4th 518, 531–532.)

4

"[W]e review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime . . . beyond a reasonable doubt.  [Citation.] The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value . . . .  In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)  "We 'must accept logical inferences that the jury might have drawn from the circumstantial evidence.' " (*Ibid.*)  " 'We do not reweigh evidence . . . .'  'Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact.' " (*People v. Brown* (2014) 59 Cal.4th 86, 106.)

We conclude substantial evidence supports the jury's finding that Cook aided and abetted Hoyland in the false imprisonment of L.C.  Regarding Cook's knowledge that Hoyland would restrain potential intervenors, including patrons, both Hoyland and Cook were armed and wearing masks.  Hoyland had a bag with him that contained zip ties and duct tape.  Cook helped Hoyland rob the store owner by pointing his firearm at him while Hoyland put zip ties on him.  Zip ties were later located in a car linked to Cook and Hoyland.  Based on this evidence, the jury could reasonably conclude that Cook knew Hoyland would restrain patrons, including L.C., through menace or violence.  " ' "Menace" ' is defined as " ' "a threat of harm express or implied by word or act." ' " ' " (*People v. Wardell* (2008) 162 Cal.App.4th 1484, 1490.)  "Violence" is defined as " ' "where the force used is greater than that reasonably necessary to effect the restraint." ' " (*People v. Dominguez* (2010) 180 Cal.App.4th

5

1351, 1357.)  And here, restraint was accomplished by Hoyland and Cook wearing masks, carrying firearms, carrying zip ties, and using them if necessary.  (*Dominguez*, at p. 1360 [essential element of false imprisonment is restraint of the person].)

We also conclude there was substantial evidence that Cook intended to facilitate restraint and encouraged it by moving across the store while masked and armed.  L.C. "instantly" knew there was a robbery in progress when he entered the store.  He believed there were two people in the store because he could hear the movement of a second person running to the other side of the store.  L.C. said he complied with the direct perpetrator's directives to do "whatever *they* want," which supports the prosecutor's argument that Hoyland and Cook "were working in concert."  (Italics added.)

There was also "only one way in and out" of the store.  L.C. knew there was a second person present, and he complied to avoid "any issues."  Had Cook not been moving around the store, L.C. may have had a means of escape.  The jury could reasonably conclude that Cook facilitated and encouraged the restraint of persons who might interfere with the robbery, including patrons such as L.C.  Collectively, the evidence reasonably supports the judgment because Cook essentially acted as an armed "lookout" who blocked the only egress out of the store.  Acting as a lookout can constitute aiding and abetting behavior.  (See, e.g., *People v. Campbell, supra,* 25 Cal.App.4th at p. 409 [blocking one's view, diverting suspicion, and watching for others who might approach are textbook examples of aiding and abetting behavior]; *People v. Dyer* (1963) 217 Cal.App.2d 176, 180 [aider-and-abettor liability attached because the defendant's "presence [during the attack on the victim] lent support and encouragement to his companions

6

and created a greater threat in the mind of the victim"].)  The jury rejected the defense theory that there was "no evidence that [Cook] did anything."  Substantial evidence supports the conviction.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


BALTODANO, J.


We concur:


YEGAN, Acting P. J.


CODY, J.

7

David R. Worley, Judge

Superior Court County of Ventura

_____


Christine M. Aros, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.