Filed 5/17/22  P. v. Camacho CA2/3
(see concurring & dissenting opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>FRANCISCO JAVIER CAMACHO,<br><br>    Defendant and Appellant. | B312190<br><br>(Los Angeles County<br>Super. Ct.<br>No. BA027667) |

APPEAL from an order of the Superior Court of Los Angeles County, James R. Dabney, Judge.  Affirmed.

Sandra Gillies, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Daniel C. Chang and John Yang, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

In 2019, Francisco Javier Camacho petitioned for resentencing pursuant to Penal Code[1] section 1170.95. The trial court summarily denied the petition at the prima facie stage of review, on the basis that the record of conviction showed a jury found true the robbery-murder special circumstance allegation pursuant to section 190.2, subdivision (a)(17) and the personal use of a firearm allegation pursuant to section 12022.5, subdivision (a). Camacho did not timely appeal. In 2021, Camacho again sought relief under section 1170.95 by filing a supplemental request to the 2019 petition. As relevant here, the trial court denied the request stating Camacho was ineligible for relief as a matter of law due to the true findings by the jury and that the appropriate remedy was to appeal the original denial.

Camacho appeals from the denial of his supplemental request. We find that there was no procedural bar to Camacho's supplemental request. Camacho is nonetheless ineligible for relief as a matter of law because a jury found true the robbery-murder special circumstance allegation. Therefore, we do not reach the question of whether the court properly relied on the true finding on the personal use of a firearm allegation. We affirm.

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

**FACTUAL AND PROCEDURAL BACKGROUND[2]**

## I.  Camacho's underlying convictions

In 1992, a jury convicted Camacho of first degree murder, attempted murder, second degree robbery, and two counts of attempted second degree robbery.  The jury found true the robbery-murder special circumstance allegation pursuant to section 190.2, subdivision (a)(17) and found true that Camacho personally used a firearm pursuant to section 12022.5, subdivision (a) in the commission of all the offenses.

The convictions resulted from two separate armed robberies involving multiple victims on one September night in 1990.  The incidents involved Camacho and two other suspects, Petayah Little[3] and Eldridge Richardson.  During the first robbery, around 10:00 p.m., both Camacho and Little went into an occupied residence, both fired shots, and a victim, Allen Watkins, was shot and injured.  About one hour later, at a location nearby, victim Linden[4] Glave was sitting in a car, when held at gunpoint by Camacho and Little.  After a struggle, Glave was shot and killed.  Camacho and Little ran to a waiting car.  A police officer in the area heard tires screeching, and a car chase

---

[2] Some of the facts and procedural background are summarized from our prior unpublished opinion (*People v. Camacho* (Dec. 1, 1995, B071909) [nonpub. opn.]), of which we have taken judicial notice at respondent's request.  (Evid. Code, §§ 451, 459.)

[3] Little was under the jurisdiction of the juvenile court during the pendency of Camacho's case.

[4] The record contains two different spellings:  Linden and Lindon.

ensued. During the car chase, one suspect jumped out of the car and ran off. The pursuit continued until Richardson and Little were arrested. Camacho was apprehended two weeks later.

At trial, Camacho offered an alibi and the testimony of Little. Little testified that he committed the crimes, not with Camacho, but with " 'G.' " Regarding the murder, Little testified that G placed Glave in a chokehold and then Little shot Glave. In rebuttal, a police officer testified that Little made a statement on the night of the offense admitting that he committed the crimes with Camacho and that Camacho shot Glave.

Relevant here, the jury was instructed with CALJIC No. 8.80.1 for the robbery-murder special circumstance. The jury was not instructed on the theory of natural and probable consequences.

The trial court sentenced Camacho to life without the possibility of parole (LWOP), plus a consecutive five years for the section 12022.5, subdivision (a) enhancement and ordered the determinate terms for the other convictions to run concurrently.

A different panel of this Division affirmed Camacho's convictions. (*People v. Camacho, supra*, B071909, at p. 17.) Among other things, our court rejected the contention that the trial court committed instructional error regarding CALJIC No. 8.80.1.[5] Further, the court rejected the contention that the

_____

[5] The prior opinion indicated that there was a factual dispute over what was orally read to the jury. Without deciding the factual dispute, the panel held, even if the trial court did make omissions during its oral reading of CALJIC No. 8.80.1, such oversight was harmless, because the record showed that the trial court provided the jury with the accurate, written version of CALJIC No. 8.80.1 to review during its deliberations, and

4

trial court committed instructional error when it failed to define "reckless indifference to human life" because there was no sua sponte duty to define "reckless indifference to human life." The court further found that the evidence established as a matter of law that Camacho acted with reckless indifference to human life.[6]

---

because the trial court also admonished the jury to be governed by the instructions in its final wording.

[6] The appellate court reasoned: "Turning to Camacho's participation in the murder of Glave, the evidence here establishes as a matter of law, at the very least, Camacho acted with reckless indifference to human life. . . . Little and Camacho were out to commit robbery that night and had only netted $2.00 by the time Camacho spied the Jaguar. Both suspects carried guns. Camacho knew Little was willing to shoot at a victim as they had both already fired on victims that night on Cahuenga Boulevard. Little testified he pistol whipped Glave and struggled with the victim who finally grabbed Little's gun. Just as Little was losing ground in his fight with Glave, Camacho came around to the passenger side of the Jaguar and put Glave in a choke hold, thereby enabling Little to disarm and shoot Glave in the chest. The jury could easily infer the purpose of the choke hold was to control Glave to enable Little to kill him. Little testified as much. There was no testimony Camacho was surprised at the shooting or that he tried to prevent Little from taking aim. Finally, Camacho fled with Little, as the latter testified, leaving Glave to die. No jury would have concluded Camacho was unaware of the extreme likelihood his actions would result in Glave's death. Stated otherwise, a reasonable jury would have concluded the homicide was a natural and probable consequence of this violence [citation], and that Camacho acted with reckless

5

## II.    The section 1170.95 petitions

In 2019, after the passage of Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), Camacho petitioned for resentencing pursuant to section 1170.95 (the 2019 petition).  The People filed an opposition to the petition.

---

indifference to that consequence."  (*People v. Camacho, supra*, B071909, at p. 12.)

The panel then contrasted Camacho's involvement with the petitioner in *Enmund v. Florida* (1982) 458 U.S. 782, reasoning: "Unlike *Enmund* where the record did not warrant a finding the defendant had 'any intention of participating in or facilitating a murder,' [citation], the record here supports such an inference.  Camacho was present and actively facilitated the murder by holding Glave in a choke hold.  Nor was Camacho merely minimally involved.  If the jury believed Little's trial testimony, it suggested Camacho found and chose to prey on the Jaguar.  Camacho was the one to first approach Glave.  He also voluntarily ran around the car to help Little in his struggle with Glave and held the victim by the neck so that Little could regain his gun and fire.  It cannot be said [that] Camacho merely participated in a robbery in the course of which a murder was committed.  Rather, Camacho both participated in the robbery, contemplated the possibility of homicide[,] and[ ] actively *helped commit the murder*.  [¶]  In sum, the trial court's failure to define reckless indifference to human life was harmless beyond a reasonable doubt because the evidence shows, *as a matter of law* Camacho acted with reckless indifference to human life."  (*People v. Camacho, supra*, B071909, at pp. 13–14.)

6

Without appointing counsel,[7] the trial court summarily denied the petition. The court based its decision on the record of conviction. The court found that Camacho had failed to establish a prima facie case for relief because the jury found true the special circumstance allegation pursuant to section 190.2, subdivision (a)(17). The court also noted that the jury found a personal use of firearm allegation true. Camacho did not timely appeal.[8]

In 2021, with the assistance of counsel, Camacho filed his supplemental request for relief under section 1170.95. The supplemental request raised new legal authority which was decided after the trial court's summary denial of the 2019 petition: *People v. York* (2020) 54 Cal.App.5th 250, review

---

[7] This issue has not been raised on appeal. After both summary denials in this case, our Supreme Court held in *People v. Lewis* (2021) 11 Cal.5th 952, 967, 970, 973, that counsel must be appointed upon the filing of a facially sufficient petition, and any error in failing to appoint counsel is state law error only, tested for prejudice under *People v. Watson* (1956) 46 Cal.2d 818.

[8] In 2020, Camacho filed a notice of appeal, which was rejected by the court clerk because it was received after the expiration of the 60-day period prescribed for filing an appeal. Shortly thereafter, Camacho, in pro. per. and with the assistance of a fellow inmate, asked for reinstatement of his right to appeal, alleging his counsel failed to represent him and specifically, failed to file a notice of appeal in a timely fashion. In this request, Camacho attached a letter from the Los Angeles County Public Defender's Office stating that his section 1170.95 petition was received, and it would be forwarded to a special Senate Bill 1437 unit. The trial court denied Camacho's request to reinstate his right to appeal.

granted November 18, 2020, S264954, *People v. Smith* (2020) 49 Cal.App.5th 85, review granted July 22, 2020, S262835, and *People v. Torres* (2020) 46 Cal.App.5th 1168, review granted June 24, 2020, S262011. Camacho requested an order to show cause, based on the new case law in his favor.

The trial court summarily denied the request. In denying the supplemental request, the trial court issued an order stating, "Petitioner filed request for resentencing pursuant to . . . [section] 1170.95 which was denied on August 9, 2019. Court ruled that because the record of conviction revealed a jury found a special circumstance allegation pursuant to . . . [section] 190.2[, subdivision] (a)(17) to be true and, in addition found a personal use of a firearm allegation to be true the petition failed to establish a prima facie case for relief. Counsel for petitioner has now filed a 'supplemental request for relief,' citing various cases that ruled a true finding on a special allegation does not necessarily preclude relief pursuant to [section] 1170.95. The court recognizes that there is a split of authority on this issue, which is currently before the state supreme court, but declines to revisit its prior ruling. Based on the facts as recited in the appellate court decision and the jury's findings the court found that there was no prima facie case that petitioner was entitled to relief. If the court erred, the appropriate remedy was to appeal that decision."

Camacho filed a notice of appeal indicating he was appealing from an order affecting his substantial rights.

## DISCUSSION

Camacho contends his supplemental request was not procedurally barred, and further contends that the trial court erred by summarily denying it at the prima facie stage of review

8

by improperly concluding the jury's true findings on the special circumstance and gun use allegations precluded section 1170.95 relief as a matter of law. We turn first to the procedural issue.

## I.     Camacho's supplemental request is not procedurally barred.

Camacho contends his supplemental request is not procedurally barred, asserting that collateral estoppel does not apply, and in any case, there are equitable reasons for not applying collateral estoppel. Camacho cites to *People v. Farfan* (2021) 71 Cal.App.5th 942, 946 to 947, which rejected the idea that a second, subsequent petition pursuant to section 1170.95 is procedurally barred where it rested on new legal authority challenging the basis for the trial court's summary denial of the previous petition.

*People v. Farfan, supra*, 71 Cal.App.5th at page 950, based its decision, in relevant part, on statutory interpretation of section 1170.95 and on public policy considerations which weighed against applying collateral estoppel. The *Farfan* court held, "Neither the express language of section 1170.95 nor the stated purpose of the legislation supports limiting access to relief under section 1170.95 as advocated by respondent where, as here, the subsequent petition rested on new legal authority which challenged the basis for the trial court's summary denial of the previous petition." (*Farfan*, at pp. 946–947.)

The People do not address *Farfan* on appeal. Instead, the People argue the issues presented fall outside of the collateral estoppel analysis. The People argue, "As to the principles of collateral estoppel and res judicata, they clearly contemplate application where there has been a prior action and a new action, which is not the case here as the supplemental request was

9

obviously a supplement[al] filing in the original action, rather than a new resentencing petition that instituted a new action." The People thus assert the trial court correctly refused to revisit the prior ruling on the 2019 petition because the order had become final and nonappealable, that the order denying the 2019 petition was a final judgment, and the trial court lost jurisdiction to hear a supplemental filing to the original petition. The People also assert that no statutory provisions in section 1170.95 allow for reconsideration and "[j]urisdiction may be retained after a judgment due to existing statutes, such as section 1170, subdivision (d), which allows the trial court under certain circumstances to recall a resentence within 120 days of its issuance. But barring such circumstances, defendant's only recourse would be to seek appellate review."[9] Thus, the People argue, because the deadline for appeal of the 2019 petition has passed, the trial court's denial was proper.

There is no dispute that Camacho did not timely appeal the denial of the 2019 petition. However, he filed a second, subsequent petition pursuant to section 1170.95 that raised new legal authority. True, Camacho did not label it as such, instead calling it a supplemental request. This is a semantic difference where a literal reading would exalt form over substance. The " 'label given a petition, action, or other pleading is not determinative; rather, the true nature of a petition or cause of

---

[9] Section 1170, subdivision (d), does not refer to recall of a sentence within 120 days. Section 1170, subdivision (d), refers to the petitioning process for recall and resentencing of a defendant sentenced to LWOP who was a minor at the time of commission of the offense.

10

action is based on the facts alleged and the remedy sought in that pleading.' " (*People v. Picklesimer* (2010) 48 Cal.4th 330, 340.) Under *Farfan*, there was no procedural bar to Camacho's second petition.

**II.    Because the jury found the robbery-murder special circumstance true, Camacho is ineligible for section 1170.95 relief as a matter of law.**

**A.    *Applicable law***

Senate Bill 1437, which took effect on January 1, 2019, limited accomplice liability under the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder, to ensure that a person's sentence is commensurate with his or her individual criminal culpability. (*People v. Gentile* (2020) 10 Cal.5th 830, 842–843; *People v. Lewis*, *supra*, 11 Cal.5th at pp. 957, 971.)

Senate Bill 1437 amended the felony-murder rule by adding section 189, subdivision (e), which provides that a participant in the perpetration of qualifying felonies is liable for felony murder only if the person:  (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor; or (3) was a major participant in the underlying felony and acted with reckless indifference to human life, as described in section 190.2, subdivision (d).  (*People v. Gentile*, *supra*, 10 Cal.5th at p. 842.)  Senate Bill 1437 also amended the natural and probable consequences doctrine by adding subdivision (a)(3) to section 188, which states that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime."

Senate Bill 1437 also added section 1170.95, which created a procedure whereby persons convicted of murder under a now-

11

invalid felony-murder or natural and probable consequences theory may petition for vacation of their convictions and resentencing. A defendant is eligible for relief under section 1170.95 if he or she meets three conditions: he or she (1) must have been charged with murder by means of a charging document that allowed the prosecution to proceed under a felony murder or natural and probable consequences theory; (2) must have been convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder; and (3) could not presently be convicted of murder or attempted murder due to changes to sections 188 and 189 effectuated by Senate Bill 1437. (§ 1170.95, subd. (a).)

The defendant is entitled to the appointment of counsel, if requested, upon the filing of a facially sufficient petition, without regard to his or her eligibility for relief. (*People v. Lewis*, *supra*, 11 Cal.5th at p. 957.) After the appointment of counsel and the opportunity for briefing, when determining whether the defendant has made a prima facie showing of entitlement to relief, the court may consider the record of conviction. (*Id.* at pp. 957, 960, 970–971.) "The record of conviction will necessarily inform the trial court's prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless. This is consistent with the statute's overall purpose: to ensure that murder culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed as part of a single-step prima facie review process." (*Id.* at p. 971.)

"While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section 1170.95 relief, the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citations.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citations.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*People v. Lewis*, *supra*, 11 Cal.5th at p. 971.) In reviewing any part of the record "at this preliminary juncture," a trial court may not engage in " 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id.* at p. 972.)

**B.** *Analysis*

Camacho contends the trial court erred by ruling he was ineligible for section 1170.95 relief as a matter of law because the jury's true finding on the special circumstance predates our Supreme Court's decisions in *Banks* and *Clark*.[10] Therefore,

---

[10] *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522. In *Banks*, the Supreme Court clarified certain factors to consider in determining whether an aiding and abetting defendant is a major participant. In *Clark*, the Supreme Court clarified certain factors to consider in

Camacho urges that the trial court should have issued an order to show cause.

As noted, Camacho's jury found true the robbery-murder special circumstance allegation (§ 190.2, subd. (a)(17)). The jury was instructed pursuant to CALJIC No. 8.80.1 as follows: "If you find that the defendant was not the actual killer of a human being, you cannot find the special circumstance to be true unless you are satisfied beyond a reasonable doubt that such defendant with the *intent to kill* [aided,] [abetted,] [counseled,] [commanded,] [induced,] [solicited,] [requested,] [or] [assisted] any actor in the commission of the murder in the first degree [.] [, or *with reckless indifference to human life and as a major participant,* [aided,] [abetted,] [counseled,] [commanded,] [induced,] [solicited,] [requested,] [or] [assisted] in the commission of the crime of robbery or attempted robbery which resulted in the death of a human being, namely Lindon Glave." (Italics added.)

The jury's true finding on the special circumstance allegation therefore demonstrates Camacho is ineligible for section 1170.95 relief as a matter of law because Camacho could still be convicted under section 189, subdivision (e) as amended by Senate Bill 1437. To make its finding, the jury necessarily found that Camacho, if he was not the actual killer, either had the intent to kill or acted with reckless indifference to human life and was a major participant in the commission of the robbery. Thus, by finding the special circumstance true, the jury made the requisite findings necessary to sustain a felony-murder

---

determining whether an aiding and abetting defendant acted with reckless indifference to human life.

14

conviction under the amended law.  In other words, the "language of the special circumstance tracks the language of Senate Bill 1437 and the new felony-murder statutes."  (*People v. Gutierrez-Salazar* (2019) 38 Cal.App.5th 411, 419.)  Camacho is therefore ineligible for resentencing under section 1170.95 as a matter of law.  (See, e.g., *People v. Simmons* (2021) 65 Cal.App.5th 739, 746–747, review granted Sept. 1, 2021, S270048; accord, *People v. Jones* (2020) 56 Cal.App.5th 474, 482, review granted Jan. 27, 2021, S265854; *People v. Gomez* (2020) 52 Cal.App.5th 1, 15, review granted Oct. 14, 2020, S264033; *People v. Nunez* (2020) 57 Cal.App.5th 78, 91, review granted Jan. 13, 2021, S265918.)

Camacho urges us to follow other courts who have concluded that a true finding on a special circumstance does not, by itself, render a petitioner ineligible for relief.  (See, e.g., *People v. Torres, supra*, 46 Cal.App.5th at p. 1178.)  *Torres*, at page 1179, reasoned that *Banks* and *Clark* "construed section 190.2, subdivision (d) in a significantly different, and narrower manner than courts had previously construed the statute."  "Accordingly, in determining if [defendant] could be convicted today of first degree murder, we cannot simply defer to the jury's pre-*Banks* and *Clark* factual findings that [defendant] was a major participant who acted with reckless indifference to human life as those terms were interpreted at the time."  (*Ibid.*)  "No court has affirmed the special circumstances findings at issue post-*Banks* and *Clark*.  There is therefore a possibility that [defendant] was punished for conduct that is not prohibited by section 190.2 as currently understood, in violation of [defendant]'s constitutional right to due process."  (*Id.* at p. 1180, fn. omitted; accord, *People v. Smith, supra*, 49 Cal.App.5th at

p. 93; *People v. York*, *supra*, 54 Cal.App.5th at p. 258; cf. *People v. Secrease* (2021) 63 Cal.App.5th 231, 247, review granted June 30, 2021, S268862 [adopting a "middle ground" in which pre-*Banks/Clark* special circumstance does not bar § 1170.95 relief as matter of law absent judicial determination that evidence was sufficient under those cases, but requiring courts hearing the petition and any ensuing appeal to determine sufficiency of evidence under *Banks* and *Clark*].)

As the foregoing cases indicate, discussion generated by this issue has been intellectually robust. We welcome the clarity that will come soon, as this issue is pending before our Supreme Court in *People v. Strong* (Dec. 18, 2020, C091162) [nonpub. opn.], review granted March 10, 2021, S266606. In the meantime, we are persuaded by the line of reasoning in the cases deciding that a jury's true finding on the robbery-murder special circumstance renders a petitioner ineligible for section 1170.95 relief as a matter of law. Accordingly, we conclude that the record of conviction shows Camacho's ineligibility as a matter of law, without the need for factfinding or credibility determinations. (See *People v. Lewis*, *supra*, 11 Cal.5th at p. 971.)[11] Having so concluded, we need not reach whether the

---

[11] The People assert that, even if a jury's pre-*Banks* and *Clark* true finding on a special circumstance allegation is not automatically preclusive, we may conduct our own evaluation of the evidence to determine whether it supports such a finding in light of *Banks* and *Clark*. And, they argue, the evidence here satisfied the *Banks/Clark* standard. Given our conclusion that the special circumstance finding renders Camacho ineligible as a matter of law, we do not address this issue.

16

trial court properly relied on the true finding on the personal use of a firearm enhancement.

## DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED.

KIM, J.*

I concur:

EGERTON, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

LAVIN, Acting P. J., Concurring and Dissenting:

I agree there was no procedural bar to Francisco Javier Camacho's supplemental request under Penal Code[1] section 1170.95. In my view, however, the jury's true finding on the robbery-murder special-circumstance allegation does not categorically preclude resentencing where, as here, the true finding was made prior to *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522. "The Courts of Appeal have subjected the issue at hand to vigorous debate and devoted countless pages of discussion to the subject. The issue is currently under review by the Supreme Court as well, so we will soon have clarity one way or the other. (*People v. Strong* (Dec. 18, 2020, C091162) [nonpub. opn.], review granted Mar. 10, 2021, S266606.)" (*People v. Arias* (2021) 66 Cal.App.5th 987, 1003–1004, review granted Sept. 29, 2021, S270555.) Accordingly, I need not add to the conversation with further argument or analysis. Suffice it to say I am persuaded by the logic of the courts that have concluded pre-*Banks* and *Clark* felony-murder special-circumstance findings do not categorically preclude defendants from obtaining resentencing relief under section 1170.95.[2]

---

[1] Undesignated statutory references are to the Penal Code.

[2] I also agree with Camacho that the firearm enhancement under section 12022.5, subdivision (a) does not clearly show that he acted with malice aforethought. (See *People v. Offley* (2020) 48 Cal.App.5th 588, 598 [enhancement under section 12022.53, subdivision (d) does not preclude relief under section 1170.95]; *People v. Wardell* (2008) 162 Cal.App.4th 1484, 1488 [section 12022.5, subdivision (a) personal use of a firearm enhancement does not require specific intent].)

Further, I do not agree with the Attorney General that the trial court's error in summarily denying the petition was harmless under the principles set forth in *People v. Watson* (1956) 46 Cal.2d 818. The Supreme Court recently clarified in *People v. Lewis* (2021) 11 Cal.5th 952 that a trial court's authority at this stage of review is limited, in that it may not engage in factfinding involving the weighing of evidence. (*Id.* at p. 972.) I decline the Attorney General's invitation to engage in that very exercise.

In sum, I would reverse the order and remand for further proceedings consistent with section 1170.95.


LAVIN, Acting P. J.