Filed 10/3/24  P. v. Ha CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B330257 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA118272-01) |
| v. | |
| XUONG THAM HA, | |
| Defendant and Appellant. | |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Mike Camacho, Judge.  Reversed and remanded with directions.

Johnathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Chung L. Mar and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

Xuong Tham Ha appeals from a postjudgment order denying his petition for resentencing on his conviction for attempted murder under Penal Code section 1172.6 (former section 1170.95).[1]  The superior court denied Ha's petition at the prima facie stage after deciding that Ha was "convicted . . . by plea of being the actual shooter."  Notably, the court's decision was based in part on the transcript from Ha's preliminary hearing, along with the information and the transcript of Ha's plea.  Ha contends on appeal that the information, preliminary hearing transcript, and plea do not establish his ineligibility for resentencing as a matter of law.  We agree.  Accordingly, we reverse the order denying Ha's section 1172.6 petition and direct the trial court to issue an order to show cause and hold an evidentiary hearing.

## FACTUAL BACKGROUND[2]

On March 8, 2018, around 11:00 p.m., Fred Yue was at a karaoke bar in South El Monte with four or five of his friends, one of whom was Stephen.[3]  At some point, a fight broke out between Yue's friends (including Stephen) and other people at

---

[1]     All undesignated statutory references are to the Penal Code.  Effective June 30, 2022, section 1170.95 was renumbered to section 1172.6 with no change in text.  (Stats. 2022, ch. 58, § 10.)

[2]     For context, we provide a brief summary of the facts that were elicited at the preliminary hearing.

[3]     Yue did not remember Stephen's last name.

the bar. The fight started because a person at the bar named Tiger thought Stephen owed the bar money.

Yue testified many people were involved in the fight, people were screaming, and it was loud. During the fight, Yue was standing "in the middle of everyone." Yue heard gunfire behind him, turned around, and saw a man pointing a gun at the ceiling. The man was 13 feet away from Yue. The man then pointed the gun at Yue and said, " 'Don't mess around in here because this is Tiger's place.' " Yue told the man to "put down [the] gun" and to "calm down." The man shot Yue once in the hip, and then Yue lost consciousness. He spent 20 days in the hospital with serious injuries. Yue identified Ha in court as the man who shot him.

During cross-examination, defense counsel asked Yue about a "young friend" who was drinking with him. Yue identified the friend as "Leafy." Defense counsel asked Yue if Leafy had a gun that night. Yue initially stated, "Yes," but when defense counsel then asked, "He had a gun in the bar; didn't he?," Yue responded, "No. The individual I saw with the gun was Mr. Ha. That was the only one I saw with the gun that night." Yue admitted that "a lot of things" about the night were confusing, like "what happened first, what happened next, and what other people [were] doing."

Chu Tzu Fei[4] testified that on March 9, 2018, he was at the karaoke bar with more than 20 of his friends, including Yue and Stephen. At some point, a "big" argument broke out between Fei's group and another group. The argument involved more than 10 people, and Stephen was at the center of it. A man Fei

---

[4]     The complaint refers to Fei as Tzu Chu. Based on Fei's own spelling of his name at the preliminary hearing, we refer to him hereafter as Fei.

identified in court as Ha was standing with the group of people arguing with Stephen, but Fei did not hear Ha say anything. The room was very dark. During the argument, Fei saw Ha holding a "small gun." Fei tried to take the gun away from Ha but was not successful, and Ha fired a shot at the ceiling and then shot Fei in the leg one time. When Ha fired the shot at Fei, Fei was standing next to Stephen. At some point, Stephen got shot as well. In total, Fei heard four gunshots. Fei did not see anyone besides Ha with a gun.

Detective Sandra Jimenez of the Los Angeles County Sheriff's Department testified she searched Ha's home and found a large amount of ammunition and various guns, including a Glock nine-millimeter handgun and a .38-caliber revolver.

## PROCEDURAL BACKGROUND

### 1. Ha's Charges and Plea

In October 2018, Ha was charged with attempted murder[5] of Yue (§§ 187, subd. (a), 664), one count of assault with a firearm as to Ze Wei[6] (§ 245, subd. (a)(2)), one count of assault with a firearm as to Fei (§ 245, subd. (a)(2)), possession of a short-barreled rifle or shotgun (§ 33215), possession of a large-capacity magazine (§ 32310, subd. (a)), and possession of an assault weapon (§ 30605, subd. (a)).

As to the attempted murder count, the People alleged Ha personally and intentionally discharged a firearm that caused

---

[5] The People did not allege that the attempted murder was willful, deliberate, and premeditated (§ 664, subd. (a)).

[6] During the preliminary hearing, Ze Wei was identified as the person referred to as "Stephen" during Yue's and Fei's testimony.

4

great bodily injury or death to Yue (§ 12022.53, subd. (d)); Ha personally and intentionally discharged a firearm (§ 12022.53, subd. (c)); Ha personally used a firearm (§ 12022.53, subd. (b)); and Ha personally inflicted great bodily injury upon Yue (§ 12022.7, subd. (a)).  As to the two counts of assault with a firearm on Wei and Fei, the People alleged Ha personally used a firearm (§ 12022.5, subd. (a)).  Ha was held to answer on all six counts and the additional allegations.  After Ha's preliminary hearing, the People amended the information to add an allegation to the attempted murder charge that Ha personally used a firearm under section 12022.5, subdivision (a).

In July 2019, Ha pleaded no contest to all counts.  He also admitted he personally used a firearm in violation of section 12022.5, subdivision (a), as to the attempted murder and the two assault counts.  All counsel stipulated that the preliminary hearing transcript, police report, and arrest report provided a factual basis for Ha's plea.  As pertinent here, on the attempted murder count, the trial court sentenced Ha to 10 years in prison, consisting of the middle term of seven years plus a consecutive three years (the low term) for the section 12022.5, subdivision (a), firearm enhancement.

2.    ***Ha's Section 1172.6 Petition Proceedings***

On September 30, 2022, Ha filed a section 1172.6 petition for resentencing on his conviction for attempted murder.  The People opposed on the ground that Ha "was not convicted under the felony-murder rule or under the natural and probable consequences doctrine."  The court appointed counsel for Ha and set a hearing to determine whether Ha had made a prima facie showing that he was eligible for relief.

5

At the hearing on Ha's petition, the court noted it had reviewed the parties' briefing, the preliminary hearing transcript, and the pre-plea report. Based on those documents, the court denied the petition. It reasoned that Ha "was convicted based solely upon his conduct as a shooter in the case. There was no second shooter. There was allegedly an accomplice but that person did not participate specifically in the shooting of the victim. . . . And victim [Yue] . . . survived the shooting but was able to identify [Ha] at the preliminary hearing as the sole perpetrator, the sole gunman, if you will, of the act committed upon him." The court also noted that during Ha's plea, Ha stipulated to the preliminary hearing transcript as providing the factual basis for his plea, and Ha admitted to using a firearm in the commission of the attempted murder, which the court found amounted to an admission Ha was the "actual shooter." The court found Ha was not entitled to relief as a matter of law.

Ha timely appealed.

## DISCUSSION

### 1.  *Section 1172.6 Procedure*

Effective 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) (SB 1437) substantially modified the law governing accomplice liability for murder. (*People v. Strong* (2022) 13 Cal.5th 698, 707-708 (*Strong*); *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).) It eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843, superseded by statute on other grounds as stated in *People v. Glukhoy* (2022) 77 Cal.App.5th 576, 584) and amended section 188 to provide: "Malice shall not be imputed to a person based solely on his or her participation in

6

a crime" (§ 188, subd. (a)(3)).[7]  It also enacted a procedure in section 1172.6 whereby individuals convicted of murder based on the natural and probable consequences doctrine, felony murder, or "other theory under which malice is imputed to a person based solely on that person's participation in a crime" could petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if they could not now be convicted of murder under the law as amended.  (§ 1172.6, subd. (a).)

Effective 2022, Senate Bill No. 775 (2021-2022 Reg. Sess.) clarified that SB 1437's ameliorative changes and procedure for potential relief applied to individuals convicted of attempted murder under the natural and probable consequences doctrine. (*People v. Birdsall* (2022) 77 Cal.App.5th 859, 865, fn. 18.) Section 1172.6, subdivision (a), now reads, in relevant part, "A person convicted of . . . attempted murder under the natural and probable consequences doctrine . . . may file a petition with the court that sentenced the petitioner to have the petitioner's . . . attempted murder . . . conviction vacated and to be resentenced on any remaining counts."

Under section 1172.6, the resentencing procedure begins with the filing of a petition containing a declaration that all requirements for eligibility are met (§ 1172.6, subd. (b)(1)(A)), including that "[t]he petitioner could not presently be convicted of . . . attempted murder because of changes to Section 188 . . . made effective January 1, 2019." (*Strong*, *supra*, 13 Cal.5th at p. 708.) The trial court must then determine if the petitioner has made a prima facie showing that he or she is entitled to relief.  (§ 1172.6,

---

[7]     SB 1437 also amended the felony-murder rule by adding section 189, subdivision (e), but the felony-murder rule is not at issue in this appeal.

subds. (a)-(c); accord, *Strong*, at p. 708.) " ' "[T]he court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' " (*Lewis*, *supra*, 11 Cal.5th at p. 971; see *People v. Curiel* (2023) 15 Cal.5th 433, 460 (*Curiel*).) "[T]he 'prima facie bar was intentionally and correctly set very low.' " (*Lewis*, at p. 972.)

The court may consider the record of conviction, which will "necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, *supra*, 11 Cal.5th at p. 971; see *Curiel*, *supra*, 15 Cal.5th at pp. 463-464.) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis*, at p. 972.)

"[T]he court may appropriately deny a petition at the prima facie stage if the petitioner is ineligible for relief *as a matter of law*." (*People v. Harden* (2022) 81 Cal.App.5th 45, 52; see *Curiel*, *supra*, 15 Cal.5th at p. 460.) "Consequently, '[i]f the petition and record in the case establish *conclusively* that the [petitioner] is ineligible for relief, the trial court may dismiss the petition.' " (*Curiel*, at p. 460, italics added.) Stated another way, if the record of conviction conclusively shows the petitioner was convicted under a theory of liability *not* affected by the amendments to the law of murder and attempted murder, such as attempted murder under actual perpetrator or direct aiding and abetting theories, the trial court may dismiss the petition. (*People v. Williams* (2024) 103 Cal.App.5th 375, 397 (*Williams*),

review granted Sept. 11, 2024, S286314 [evaluating whether record of conviction showed petitioner was convicted of "attempted murder under a valid theory, i.e., as a direct perpetrator"]; *People v. Coley* (2022) 77 Cal.App.5th 539, 548 [section 1172.6 "applies by its terms only to attempted murders based on the natural and probable consequences doctrine," and "[d]irect aiding and abetting remains a valid theory of attempted murder"].) We review de novo the trial court's prima facie inquiry. (*Williams*, at p. 387.)

2. ***The Information Does Not Establish Ha's Resentencing Ineligibility***

The People contend Ha is ineligible for resentencing under section 1172.6 because "the totality of charges [in the information] specifically alleged that [Ha] was the direct perpetrator with no accomplice." We disagree that the information establishes Ha's ineligibility for resentencing as a matter of law.

The information charged Ha with attempted murder, alleging Ha "unlawfully, and with malice aforethought attempt[ed] to murder Fred Yue." Attempted murder requires express malice aforethought and the commission of a direct but ineffectual act toward accomplishing the intended killing. (*People v. Houston* (2012) 54 Cal.4th 1186, 1217.) But under the former law, in an offense involving more than a single perpetrator, it was enough for the defendant to have intended to aid and abet the actual perpetrator in the commission of a target offense, such as assault, so long as the actual perpetrator intended to kill, and the attempted murder was the natural and probable consequence of the assault. (See *People v. Montes* (2021) 71 Cal.App.5th 1001, 1007 ["When appellant was found guilty of

9

attempted murder under a natural and probable consequences theory of liability, the 'intent to kill' was imputed onto appellant from the actual killer or perpetrator."].)  Because the People generically charged Ha with attempted murder under then-existing law, the complaint allowed the prosecution to proceed on a theory of attempted murder under the natural and probable consequences doctrine.  (See § 1172.6, subd. (a)(1); *People v. Estrada* (2024) 101 Cal.App.5th 328, 337-338 (*Estrada*); *People v. Davenport* (2021) 71 Cal.App.5th 476, 484 (*Davenport*).)  An accusatory pleading need not specify the theory of attempted murder on which the prosecution will rely at trial.  (*Estrada*, at pp. 337-338.)  Specifically, attempted murder under the natural and probable consequences doctrine need not be separately pleaded.  (*Ibid*.)  Thus, the generic charge of attempted murder does not make Ha ineligible for relief.

The People contend, however, that "by charging the personal firearm-discharge and great bodily injury enhancements in the information, the prosecutor elected a theory of attempted murder requiring proof that appellant was a direct perpetrator."  Indeed, along with great bodily injury enhancements, the information alleged several firearm enhancements (§§ 12022.5, subd. (a), 12022.7, subd. (a), and 12022.53, subds. (b)-(d)), which the People correctly note require "personal" use and/or discharge of a firearm by the charged defendant and do not permit vicarious liability for a coparticipant's use or discharge of a weapon.  (Cf. *People v. Balbuena* (1992) 11 Cal.App.4th 1136, 1139, disapproved on another ground in *People v. Bland* (1995) 10 Cal.4th 991, 1001, fn. 4 ["personally armed with a firearm" under § 12022, subd. (c) "distinguishes personal from vicarious liability, requiring that the defendant himself be armed"].)

However, "the People's initial allegations were unproven and unadmitted" and thus "do not conclusively establish" Ha committed "every element of the offense of attempted murder under a valid theory." (*Williams*, *supra*, 103 Cal.App.5th at p. 388.)

The People also contend that because the information "did not charge a codefendant or suggest that anyone other than [Ha] was involved in . . . the attempted murder," the information specifically charged Ha with attempted murder as the direct perpetrator. We are not persuaded. "[A] charging decision does not establish any facts as a matter of law. [Citation.] Moreover, we are aware of no authority requiring prosecutors to try all codefendants together, so this single charging document does not foreclose the possibility of other people having been charged for related crimes. Even further, the information did not foreclose the prosecution from presenting imputed malice before a jury regardless of whether it charged others." (*Estrada*, *supra*, 101 Cal.App.5th at p. 339.) Therefore, nothing in the information establishes Ha's ineligibility as a matter of law.

3. ***Ha's Plea Does Not Establish Ha's Resentencing Ineligibility***

For the same reasons discussed, the People contend that Ha's no contest plea and admission to the firearm enhancement foreclose resentencing eligibility as a matter of law. We again disagree. Ha pleaded no contest to attempted murder and admitted to personally using a firearm in connection with the attempted murder count, but he did not plead to any particular type of malice. Further, Ha did not admit to any specific theory of attempted murder. Instead, Ha pleaded to the generic charge of attempted murder. Thus, the People could have proceeded

11

under any theory of liability, including a natural and probable consequences theory.  (See *Estrada*, *supra*, 101 Cal.App.5th at p. 339 [in pleading to attempted murder charge, Estrada did not plead to any particular type of malice or admit to any specific theory of attempted murder]; *People v. Flores* (2022) 76 Cal.App.5th 974, 987 (*Flores*) ["In entering the plea, petitioner did not admit to or stipulate to any particular theory of murder."]; but see *People v. Mares* (2024) 99 Cal.App.5th 1158, 1167-1168, review granted May 1, 2024, S284232 [finding record of conviction contained facts refuting 1172.6 petition's allegations where petitioner "pled guilty while the People were pursuing a murder conviction based only on a theory that he was the actual killer"].)  Likewise, Ha's admission that he personally used a firearm does not refute that he could have been convicted on a theory of imputed malice.  (See *People v. Wardell* (2008) 162 Cal.App.4th 1484, 1494 [petitioner's admission of § 12022.5, subd. (a) enhancement "does not encompass any specific intent."]; *Davenport*, *supra*, 71 Cal.App.5th at p. 485 [petitioner's admission to § 12022.5, subd. (a) enhancement "did not preclude the possibility of prosecution under a felony-murder theory"]; *People v. Drayton* (2020) 47 Cal.App.5th 965, 981, abrogated on other grounds in *Lewis*, *supra*, 11Cal.5th at pp. 962-963 [admission of personal use of a firearm enhancement did not preclude possibility of prosecution under a felony-murder theory]; see also *Estrada*, at p. 338 ["As with pleading guilty to a criminal offense, a plea or admission of a sentencing enhancement is likewise deemed a judicial admission of only elemental facts necessary to the enhancement . . . [petitioner's] admissions [to § 12022, subd. (b) and 12022.7 enhancements] do not establish

12

that he acted with the requisite malice aforethought."].)[8] Therefore, Ha's plea and admission do not establish his resentencing ineligibility.

4. ***The Preliminary Hearing Transcript Does Not Establish Ha's Resentencing Ineligibility***

Finally, the People contend the court properly denied Ha's petition based on Ha's preliminary hearing transcript because (1) relying on the transcript did not involve premature judicial factfinding, (2) Ha stipulated to the preliminary transcript as providing a factual basis for his plea, and (3) Ha failed to identify a "factual scenario under which he was not the actual shooter." None of the People's arguments persuades us.

A. **Division Amongst Courts of Appeal Regarding Consideration of Preliminary Hearing Transcript**

Courts of Appeal are divided on whether a trial court can consider a preliminary hearing transcript at the section 1172.6 prima facie stage. On the one hand, our colleagues in Division Three of this district held that trial courts may rely on the preliminary hearing transcript if the evidence contained within is

---

[8] The People rely on the holding of *People v. Garrison* (2021) 73 Cal.App.5th 735, 743, that "[b]y admitting that he personally used a weapon, [petitioner] necessarily admitted that he was the actual killer simply because there was no evidence either at the preliminary hearing or at the section 1170.95, subdivision (d)(3) hearing supporting any other scenario." However, as noted by Ha, *Garrison* "involve[d] a section 1170.95, subdivision (d)(3) hearing, not a prima facie inquiry" under subdivision (c). (*Garrison*, at pp. 747-748.) Thus, *Garrison* does not aid the People.

13

"uncontroverted." (*People v. Patton* (2023) 89 Cal.App.5th 649, 658, review granted June 28, 2023, S279670 (*Patton*).) Since *Patton*, two courts have reached a similar result. (See *People v. Mares*, *supra*, 99 Cal.App.5th at p. 1167 [finding it proper to rely on preliminary hearing transcript at prima facie stage for purpose of determining the People proceeded only on an actual killer theory]; *People v. Pickett* (2023) 93 Cal.App.5th 982, 990, review granted Oct. 11, 2023, S281643 [holding trial court can rely on "uncontradicted evidence from the preliminary hearing transcript" to determine prima facie eligibility even if defendant has not stipulated to transcript as a factual basis for a plea]; see also *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1166-1167 [finding the transcripts from the preliminary hearing, stipulated as providing a factual basis, demonstrated petitioner was convicted under a valid theory of murder].)

On the other hand, in *Davenport*, *supra*, 71 Cal.App.5th 476, the First District ruled the trial court engaged in " 'impermissible factfinding' " at the prima facie stage by relying on facts taken from the preliminary hearing transcript that were not stipulated to. (*Id*. at p. 482; accord *Estrada*, *supra*, 101 Cal.App.5th at p. 339 ["To the extent the court relied on the preliminary hearing transcript, such reliance here was improper because it required the court to engage in impermissible fact finding"].) *Davenport* further found "nothing in the evidence presented at the preliminary hearing conclusively refutes [petitioner's] allegation that his conviction rests on now prohibited vicarious liability theories at trial." (*Davenport*, at p. 484.) And our colleagues in the Fifth District recently held a preliminary hearing transcript could not be relied on to establish ineligibility for relief, even if the petitioner stipulated that the

14

transcript provided the factual basis for his plea. (*Williams*, *supra*, 103 Cal.App.5th at pp. 397-398; see *Flores*, *supra*, 76 Cal.App.5th at pp. 991-992; cf. *Rivera*, *supra*, 62 Cal.App.5th at p. 238 [petitioner's stipulation to a grand jury transcript as the factual basis for his plea did not constitute an admission that he committed murder with malice].)

B. **Ha's Preliminary Hearing Transcript Does Not Conclusively Establish Ha Was Convicted Under a Valid Theory**

As noted, the question whether a trial court can rely on the preliminary hearing transcript at the prima facie stage is before the California Supreme Court in *Patton*. Until the high court rules, we will follow the reasoning of *Flores*, *Rivera*, *Estrada*, and *Williams*.

The facts and procedural history in *Williams* are on all-fours with this case, except the testimony at the preliminary hearing in *Williams* was even more compelling in suggesting the petitioner was the sole, actual shooter. In *Williams*, the petitioner pleaded no contest to attempted murder and stipulated that the preliminary hearing transcript provided a factual basis for his plea. (*Williams*, *supra*, 103 Cal.App.5th at pp. 383-384.) At the preliminary hearing, the victim testified that the petitioner, acting alone, shot him in the face. (*Id*. at p. 383.) *Williams* decided that while the evidence presented at the preliminary hearing provided probable cause to believe the petitioner had committed attempted murder as the actual perpetrator of that offense, it did not "conclusively" establish that the petitioner committed the offense in that manner. (*Id*. at p. 397.)

The court explained the primary purpose of a preliminary hearing is to establish whether there is probable cause to believe that the defendant is guilty. (*Williams*, *supra*, 103 Cal.App.5th at p. 397.) " 'Probable cause "signifies a level of proof below that of proof beyond a reasonable doubt, or even proof by a preponderance of the evidence." ' " (*Ibid*.) "At the preliminary hearing, the court may weigh the evidence and assess witness credibility, but it may not reject the prosecution's evidence 'unless the evidence is " 'inherently implausible, the witnesses [have been] conclusively impeached, or the demeanor of the witnesses [is] so poor that no reasonable person would find them credible.' " ' [Citation.] Thus, the preliminary hearing generally offers the defense little incentive to present contrary evidence." (*Ibid*.) Moreover, the preliminary hearing evidence does not limit the prosecution's trial strategy—the prosecution can proffer additional proof when the case proceeds to trial. (*Id*. at p. 398.) Thus, "the preliminary hearing transcript does not *conclusively* establish a defendant's guilt, let alone any particular theory of guilt. At most, the transcript and the court's holding order establish there is probable cause to believe a defendant committed the charged offense under at least one of the theories presented by the prosecution." (*Ibid*., italics added.)

This conclusion is true, as *Williams* explained, even if defense counsel stipulated to the preliminary hearing transcript as providing a factual basis for the plea. (*Williams*, *supra*, 103 Cal.App.5th at p. 398.) "It is well settled that a stipulation to a factual basis for a plea is not 'a binding admission for all purposes.' [Citation.] Moreover, '[a] defendant is not required to personally admit the truth of the factual basis of the plea.' [Citation.] 'Courts have consistently differentiated between an

16

admission that a document or recitation contains a factual basis for a plea and an admission that statements in that document or recitation are true.'" (*Id*. at pp. 398-399; see *Flores*, *supra*, 76 Cal.App.5th at p. 991; *Rivera, supra*, 62 Cal.App.5th at p. 235.) Therefore, *Williams* held a stipulation to a factual basis does not conclusively establish the nature of the conduct underlying a plea. (*Id*. at p. 399.)

As in *Williams*, Ha stipulated that the preliminary hearing transcript provided a factual basis for his plea. The evidence at Ha's preliminary hearing provided probable cause to believe Ha shot Yue. Even if the Supreme Court decides courts may consider the preliminary hearing transcript at the prima facie stage in some circumstances, however, the evidence at Ha's preliminary hearing would not *conclusively* establish the nature of Ha's conduct underlying his plea. (See *Williams*, *supra*, 103 Cal.App.5th at pp. 397-398.) The preliminary hearing transcript demonstrates Ha was part of a chaotic bar fight with multiple participants, distinguishing his case from those where it would defy all logic to deduce there could have been other participants and that the petitioner could have been convicted under a now-invalid theory of attempted murder. (See, e.g., *Mares*, *supra*, 99 Cal.App.5th at p. 1167 [testimony at preliminary hearing established petitioner admitted to stabbing victim and acting alone]; *People v. Pickett*, *supra*, 93 Cal.App.5th at pp. 986, 990 [evidence from preliminary hearing showed petitioner was the sole person to approach the victim with a gun and fire shots]; *Patton, supra*, 89 Cal.App.5th at pp. 652-653, 657 [surveillance video played at preliminary hearing showed petitioner acted "as the sole and actual perpetrator" in shooting victim].)

17

We also decline the People's suggestion that at this prima facie stage Ha bears the additional burden of presenting evidence that "(a) there was some other person who was the actual killer and (b) [Ha] acted in concert with this person in some way that rendered [Ha] guilty of [attempted] murder under a now-abrogated theory of accomplice liability." (*Mares*, *supra*, 99 Cal.App.5th at p. 1167 [requiring such a showing by petitioner to rebut showing from preliminary hearing transcript that People pursued an actual killer theory only].) Rather, we agree with *Williams* that a petitioner is not required to submit more than a facially sufficient petition to rebut uncontroverted facts presented at a preliminary hearing. (*Williams*, *supra*, 103 Cal.App.5th at p. 404.) "Nothing in section 1172.6 permits, let alone requires, a petitioner to submit new or additional evidence at the prima facie stage." (*Williams*, at p. 405.) Requiring Ha to present some additional evidence or theory, as the People argue here, "is contrary to *Curiel*, which states that a petitioner's bare allegations, phrased in the language of the statute, are sufficient to 'put[ ] at issue all elements of the offense under a valid theory.'" (*Williams*, at p. 405.) Given these circumstances, the trial court erred in summarily denying Ha's petition without an evidentiary hearing.

## *DISPOSITION*

The order denying Ha's petition for resentencing is reversed. On remand, the trial court is directed to issue an order

/ / /

/ / /

18

to show cause and to conduct an evidentiary hearing in accordance with section 1172.6, subdivision (d).

                                        STONE, J.

We concur:


            SEGAL, Acting P. J.



            FEUER, J.